2084-1

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Mack Industries, Ltd. *et al.,* | ) | Bankruptcy No. 17-09308 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | Honorable Carol A. Doyle |
| | ) | |
| Ronald R. Peterson, as Chapter 7 | ) | |
| Trustee for Mack Industries, Ltd., *et al.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 19-00578 |
| | ) | |
| Advanced Home Remodeling Inc., | ) | |
| | ) | |
| Defendant. | ) | |

### <u>NOTICE OF MOTION</u>

To:    Jeffrey K. Paulsen
       The Law Office of William J. Factor, Ltd
       105 W. Madison, Suite 1500
       Chicago, IL 60602

PLEASE TAKE NOTICE that on **May 21, 2020 at 10:45 a.m.,** I shall appear before Honorable Judge Carol A. Doyle at the Everett McKinley Dirksen Building, 219 South Dearborn, Courtroom 742, Chicago, IL 60604 or any judge presiding and then and there present the attached DEFENDANT'S, ADVANCED HOME REMODELING INC., MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S ADVERSARY AMENDED COMPLAINT.

                                        /s/   Pamela J. Leichtling
                                        One of the Attorneys for Defendant
                                        Advance Home Remodeling Inc.

Pamela J. Leichtling# 6183213
Jill Sidorowicz #6299380
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois  60603
312-431-1455
pleichtling@noonanandlieberman.com
jsidorowicz@noonanandlieberman.com

1

## CERTIFICATE OF SERVICE

I, Pamela J. Leichtling, hereby certify that on May 19, 2020, I caused to be electronically filed true and correct copies of the attached NOTICE OF MOTION using the CM/ECF system, which will send notification of such filing to all attorneys of record and via email.

/s/   Pamela J. Leichtling
One of the Attorneys for Defendant
Advance Home Remodeling Inc.

Pamela J. Leichtling# 6183213
Jill Sidorowicz #6299380
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois  60603
312-431-1455
pleichtling@noonanandlieberman.com
jsidorowicz@noonanandlieberman.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In Re: | Chapter 7 |
| **Mack Industries, Ltd.,** *et al.*, | Case No. 17-09308 |
| **Debtors** | (Jointly Administered) |
| | |
| **Ronald R. Peterson, as chapter 7 trustee for**<br>**Mack Industries, Ltd.,** | |
| **Plaintiff,** | Adversary No. 19-00578 |
| **v.** | |
| **Advanced Home Remodeling Inc.,** | |
| **Defendant.** | |

## DEFENDANT'S, ADVANCED HOME REMODELING INC., MOTION TO DISMISS COUNTS I AND II OF PLAINTIFF'S ADVERSARY AMENDED COMPLAINT

Defendant, Advanced Home Remodeling Inc. ("Advanced"), by and through its attorneys, Pamela J. Leichtling and Jill Sidorowicz of Noonan & Lieberman, Ltd., submits this Motion to Dismiss Counts I and II of Plaintiff's Adversary Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding by Rule 7012 of the Federal Rules of Bankruptcy Procedure, and in support thereof states as follows:

1

## INTRODUCTION

The Amended Complaint suffers from the same pleading deficiencies as the original complaint and should be dismissed with prejudice. Despite the heft of the Amended Complaint, the Trustee's attempts to cure the pleading deficiencies by adding superficial allegations and attaching voluminous pages as Exhibits listing checks  do not cure the problems.  The Trustee still fails to plead any facts to establish that each transfer he seeks to avoid is an interest of the debtor in property; fails to establish that there is a debtor–creditor relationship between Advanced and itself; and fails to plead a fraudulent scheme.  The Trustee basically pleads himself out of a claim for constructive fraud by inconsistent pleadings. Debtor's admissions that it owned several of the other entities who in turn owned the properties for which Advanced performed rehab work upon, directly contradicts debtor's conclusory allegations that it did not receive reasonable value from the transfers in question.  If these pleading deficiencies are not enough to dismiss the Amended Complaint, the Amended Complaint fails to satisfy the strict pleading requirements of Rule 9(b).

## BACKGROUND

On March 24, 2017, Mack Industries, Ltd. (the "Debtor") filed a voluntary petition for relief under Chapter 11.  Ronald R. Peterson (the "Trustee") was appointed as trustee to the Debtor's bankruptcy estate.  On June 1, 2017, the case was converted from Chapter 11 to Chapter 7.  Advanced was involuntarily dissolved on June 8, 2018. Thereafter, on March 23, 2019, the Trustee filed this Adversary Complaint ("Complaint") against Advanced.  On or about November 20, 2019, this Court granted Advanced's Motion to Dismiss. On February 14, 2020, the Trustee filed an Amended Complaint ("Am. Complt.") seeking to avoid transfers on the basis

of: 1) constructive fraud (Count I); 2) actual fraud (Count II); and 3) preferential transfer (Count III).

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, as made applicable to this case by Federal Rule of Bankruptcy Procedure 7012, tests the sufficiency of the complaint. *In re Gluth Bros. Const. Co.*, 424 B.R. 379, 388 (Bankr. N.D. Ill. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), and will not survive a motion to dismiss simply because it allows a defendant "to figure out the basic factual or legal grounds for the claims" against it. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014). In order to survive a motion to dismiss, a complaint must contain enough factual allegations "to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the Trustee's claims must be dismissed if they fail to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Sarkis' Café*, 55 F. Supp. 3d at 1038, citing *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F. 3d 873, 885 (7th Cir. 2012) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a 12(b)(6) motion to dismiss, the court will take all allegations as true, including all exhibits incorporated therein, along with all reasonable inferences, in the light most favorable to the pleader. If the complaint cannot state a claim upon which relief can be granted,

the court should dismiss the complaint. *Berg v. BCS Financial Corp.,* 372 F. Supp. 1080, 1088 (

N. D. Ill 2005).

## ARGUMENT

### The Amended Complaint fails to plead claims for fraudulent conveyance and should be dismissed

### (Fraudulent Conveyance Counts I and II)

a.    **The Amended Complaint fails to satisfy the strict pleading requirements of Rule 9(b) (Fraudulent Conveyance Counts I and II)**

The Amended Complaint fails to cure the previous pleading defects from the original complaint. The Trustee's claims for fraudulent transfers must be dismissed because he has failed to plead fraud with particularity.  Federal Rule of Civil Procedure 9(b), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7009(b), provides a heightened pleading standard for fraud claims, stating "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added); *In re Potter*, 88 B.R. 843, 847 (Bankr. N.D. Ill. 1988).  This requirement serves "to discourage a 'sue first, ask questions later' philosophy." *Cincinnati Life Insurance Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013).  In fraudulent transfer cases, the plaintiff must state "what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances." *Marwil v. Oncale* (*In re Life Fund 5.1 LLC*), 2010 WL 2650024 (Bankr. N.D. Ill., June 30, 2010) at p. 3.

The Trustee still has not satisfied this pleading requirement. In an attempt to cure the prior pleading defects, the Trustee now attaches Exhibits A & B to the Amended Complaint. Exhibits A & B to its Amended Complaint allegedly set forth the amount of the payments, the check number, date and designates Debtor's bank account upon which the checks were drawn.

4

(See, Ex. A). Exhibit B allegedly lists the owner of the properties for which invoices were submitted and paid. In some, but not for the majority of the listed invoices, there is a corresponding check number representing one lump payment for a multitude of invoices tagged to different property addresses which in turn are owned by different entities and persons. (See, Ex. B, pgs. 1-277). For some reason the Trustee thinks that by attaching these Exhibits, it has provided the requisite specifics of the what, when, how, who of each subject transfer. However, the Trustee is wrong. First, there is still missing required information and second, the exhibits contain information which contradict the allegations of the amended complaint which defeat the Trustee's claim.

First, the Trustee has the burden of proof to plead and prove each element of each fraudulent transfer.  See *Glick,* supra. The Amended Complaint fails to detail each specific transfer or payment to Advanced with the required information. Neither Exhibit A nor B demonstrate that the funds used to make these payments were property of the debtor's and not the third party/property owners associated with the properties for whom these payments were allegedly made.  Just because the alleged payment was drawn against the Debtor's bank account does not equate with pleading that the funds transferred were the debtor's property. The information on the exhibits do not provide this missing information.

Second, the Trustee continues to lump the payments together without the required details of each payment. For example, Exhibit A lists check no. 54116 in the amount of $66,103.00. Neither Exhibits A or B nor any allegation in the complaint show that this check was made payable to Advanced. Using check no. 54116 as a further example, cross-referencing this check against the alleged countless invoices paid by check no. 54116, demonstrates that this check represents payment for Advanced's services to at least 31 different properties on behalf of 7

5

different owners. (See, Ex. A, p. 1; Ex. B, pgs.1-5). Since the check encompasses payment for innumerable invoices, for different services to different properties owned by different entities/persons, the trustee should be and is required to breakdown the lump sum payment and plead the who, what, when, why and how for the payment of each invoice. The Trustee has to plead and prove that the payment of each invoice constitutes a fraudulent transfer. See, *Marwil,* supra \*3. Otherwise, the Trustee is allowed to escape its burden by lumping together payments, without the required factual particularity.

### 1.    Actual fraud claim (Count I )

To establish actual fraud under both § 548 and the IUFTA, the Trustee must show that the transfers were made with a "specific intent to hinder, delay or defraud."  (11 U.S.C. § 548(a)(1)(A); 740 ILCS § 160/5(a)(1).  At the pleadings stage, the plaintiff must allege intent "with respect to each transfer sought to be avoided and must connect the allegations against the Defendants to the Debtor's scheme to defraud creditors."  *In re Equipment Acquisition Resources, Inc.*, 481 B.R. 422, 433 (Bankr. N.D. Ill. 2012). The Trustee has not done either.

Here, again, the Trustee pleads the bald conclusion that the "Debtor made the Transfers with actual intent to hinder, delay, or defraud creditors" (Am. Complt. ¶ 105) with no supporting facts, documentation, or connection as to how each transfer, which again, were not plead with the requisite particularity, was made with specific intent to defraud creditors.

The Trustee fails to plead a fraudulent scheme and that each transfer was made with the requisite intent to defraud.  The only alleged fraudulent scheme are conclusory allegations as to the debtor's intent to spite one creditor, American Residential. (See Am. Complt. ¶¶ 31-38). These allegations can best be described as a summary of two parties failing to renegotiate an agreement. No facts are alleged describing how the payment for construction work rendered by

6

Advanced to a multitude of different property owners, which debtor admits was provided, is connected to a fraudulent scheme.

The lack of specificity is compounded by Exhibit B attached to the Amended Complaint, and adds to the confusion as to the specific invoices paid which comprise the alleged fraudulent lump sum payments. Contrary to the Trustee's allegations, Exhibit B does not show payments made to Advanced. First, nowhere on Exhibit B is Advanced designated as the payee for any check listed. (See, Ex. B, pgs. 1-27).  Second, an examination of Exhibit B shows that the alleged invoices submitted for payment are in the names of countless individuals on pages 27-227. Advanced's name is not listed as a payee or the name on the invoices allegedly submitted for payment.  The Trustee's own exhibit contradicts that Advanced was the intended payee and recipient of the alleged funds. When exhibits attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12 (b)(6) motion. Here, Exhibit B controls. *See Graue Mill,* 927 F.2d 988, 991; *cf. ALA, Inc. v. CCAIR, Inc*., 29 F.3d 855, 859 n. 8 (3d Cir. 1994) (concluding that when documents attached to a complaint contradict the allegations of the complaint, the document controls in a Rule 12(b)(6) motion to dismiss for failure to state a claim); *Bell v. Lane,* 657 F.Supp. 815, 817 (N.D.Ill. 1987). Accordingly, the Trustee fails to plead that Advanced received these monies and the fraudulent conveyance counts should be dismissed.

Advanced is entitled to the specific facts regarding these transfers and the Trustee is required to plead the details to flush out these transactions, especially when the Trustee seeks to avoid payments totaling over 16 million dollars. Advanced should not be required to guess at the circumstances of each paid invoice making up these countless lump sum payments listed on Exhibit A. This is necessary information which the Trustee must plead before Advanced is

7

required to respond and defend against the claims. See, *Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F. Supp. 1226, 1230 (N.D. Ill. 1990) (ruling that Rule 9(b) pleading requirements must be followed to ensure the defendant is informed of the nature of the claim against them.).

### 2.    Constructive fraud claim (Count II)

An essential element of a constructive fraud claim is whether Debtor received "less than reasonably equivalent value" and this element is missing if the Trustee is allowed to lump all payments together, without breaking down the value of the services or work performed for each property which comprise these lump sum payments.  The Debtor paid for work Advanced performed on distressed properties; properties with little to no value and logic dictates that the renovation work increased the value of the properties. The underlying facts of each transaction, comprising the alleged fraudulent transfers, would inform Advanced as to whether the Debtor, by paying for Advanced's services, received value. It would reveal the capacity in which the Debtor made these payments and whether the Debtor discharged a duty or obligation it owed to the other owners. Without the necessary facts, Advanced is foreclosed from framing its answer and defense to the allegation of whether the Debtor received reasonably value.

Even assuming Count II meets the heightened pleading standard of Rule 9(b) – which they do not – Count II  does not state a plausible claim for constructive fraudulent transfers under either § 548 of the Bankruptcy Code or the Illinois Uniform Fraudulent Transfer Act (the "IUFTA").

To establish constructive fraud, the Trustee must allege and prove, among other things, that the Debtor made a transfer without receiving a reasonably equivalent value.  11 U.S.C. § 548(a)(1)(B); 740 ILCS § 160/5(a)(2), 160/6(a).  A constructive fraud claim will not survive a

motion to dismiss where it pleads a transfer was made for less than reasonably equivalent value without providing supporting facts. *In re Life Fund 5.1 LLC*, 2010 WL 2650024, at p. 6. Here, the Trustee pleads the bald conclusion that "the Debtor did not receive reasonably equivalent value" (Am. Complt ¶¶ 86-90) with no supporting facts or documentation.

First, the debtor cannot argue that the same evidence on the one hand demonstrates the transfers were property of the debtor's and then, characterize the same evidence to argue that these funds were not the debtor's property and thus, did not receive reasonably equivalent value.

Here, each alleged fraudulent transfer is comprised of unbounded number of invoices, for a multitude of properties. Without the Trustee pleading how payment for each invoice was fraudulent or the debtor did not receive reasonably equivalent value, the trustee cannot sustain this claim and it should be dismissed. See, *In re Kimmell*, 480 B.R. 876, 889 (Bankr. N. D. Ill. 2012) (ruling that the trustee bears the burden of proving that the transfer was made for less than reasonably equivalent value.).

The Trustee alleges that the Debtor did not receive value for the undisputed construction work performed at the properties because the debtor did not own any of the properties. (Am. Complt. ¶ 88). This argument is disingenuous. First, Exhibit B attached to the Amended Complaint contradicts this allegation because Exhibit B shows that invoices and payments were made on properties owned by the debtor. For example, the debtor is listed as the owner for work done by Advanced at the property located at 17669 Peacock Lane, Tinley Park (See, Ex. B, p. 5, property listed 17669 Peacock Lane, Tinley Park, Il); another example: the debtor is listed as the owner for the property located at 3631 Glywood Lane, (Ex. B, p. 4).

Exhibit B further demonstrates that the debtor received reasonably equivalent value because the Trustee admits that the debtor owned Mack Industries II LLC, Mack Industries III

LLC, Mack Industries IV, LLC, Mack Industries V, LLC and Mack Industries VI. (See Am. Complt. ¶ 49). The Trustee admits that the debtor holds 100% membership interest in Mack Industries I, LLC. (See Statement of Financial Affairs, ECF No. 18; question No. 25).

To boldly assert that the debtor does not own the properties for which Advanced performed work upon and therefore did not receive reasonable equivalent value for these construction services lacks candor. Although membership in a limited liability company does not confer ownership interest in the real property of the LLC, a member of an LLC owns its membership interest in the LLC and its distributional interest in an LLC. See *Peabody,* supra.

Indirect benefits to the debtor may also be evaluated as constituting reasonably equivalent value. *Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F. 2d 635, 644-645 (3rd Cir. 1991). The economic benefit does not have to be "dollar for dollar" or an exact equivalence. See, *Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir. 1997). Since Advanced performed rehab construction work on distressed properties; properties with little to no value, logic dictates that the renovation work increased the value of the properties. In turn, if the value of the property was increased, the value of each member's interest in the LLC owning the property increases in value. Thus, the debtor received an economic benefit by increasing the value of its interest in the LLC owning the property and as such, the Trustee cannot sustain its claim for constructive fraud.

b. **The Trustee fails to allege that the Debtor transferred any interest in the debtor's property**

The Trustee seeks to avoid payments to Advanced pursuant to alleged fraudulent conveyances under sections 544(b) and 548 of the Bankruptcy Code. §§ 544 (b)(1), 547, 548 (a)(1) and 550(a). Code. Fraudulent transfer claims (actual and constructive) must have been a "transfer" and the transfer must have involved 'an interest of the debtor in property." *Gierum, v*

10

*Jon Glick, et. al, (In re Glick)* 568 B.R. 634 (2017) To state a claim under these theories, the Trustee must allege facts to establish that **each transfer** [emphasis added] he seeks to avoid involved "an interest of the debtor in property." U.S.C.§§ 544 (b)(1), 547,  548 (a)(1) and 550(a); see also, *In re Chicago, Missouri & Western Ry. Co.,* 124 B.R. 769, 772 (N.D. IL 1991). The Bankruptcy Code defines estate property to consist of "all legal or equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1). Property of the estate does not include property in which a debtor only possesses legal title and not an equitable interest. 11 U.S.C. § 541(d); see, *Grede v. FCStone, LLC,* 867 F.3d 767, 779 (7th Cir. 2017) (ruling that funds belonging to beneficiaries of a statutory trust under the Commodity Exchange Act were not funds of the debtor's available for the benefit of general unsecured creditors of debtor.).

 A debtor has no equitable interest in funds it holds for another and these funds are not property of the debtor's estate. *Grede,* supra; also see, *Begier v. IRS*, 496 U.S. 53, 59, 110 S. Ct. 2258, 110 L.Ed.2d 46 (1990) (The court ruling that tax payments made to the IRS from the debtor's general account were not property of the estate but rather, were transfers of property held in trust for the government "because the debtor does not own an equitable interest in property he holds in trust for  another,  that  interest  is  not  'property  of  the estate."). *EBS Pension LLC v. Edison Bros. Stores, Inc., (In re Edison Bros. Inc.)* 243 B.R. 231, 235 (Bankr. D. Del. 2000) (stating that courts have held that "property which a debtor holds in trust (express or constructive) for another does not become property of the estate when the debtor files for bankruptcy.

Funds held by a debtor as a conduit with no control over the funds, does not convert the funds into property of the estate. *Lyon v. Contech Const. Prods., Inc.,* (*In Re Computrex, Inc*.), 403 F. 3d 807, 813 (6th Cir. 2005). In *Contech,* the court ruled that the funds received by debtor

11

from its customers and then used to pay its customers' shipping carrier's was not the debtor's property because it was intended to be used to pay the customers' freight carriers. *Id.* The court found that the debtor acted as a Bailee: collect the money and then, disburse it to the customer's creditors. *Id.* at 812. The court stating that a "bailment …imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, expressed or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished…" *Id.* While the debtor had a possessory interest in the property, it did not have a legal or equitable interest, and the comingling of funds from all of the debtor's customers does not give the debtor any property interest in the funds entrusted to them. *Id*. at 812.  Nor does having control over the funds convert the debtor's possessory interest into a legal or equitable interest. *Id*.

Similarly, the court in *Jenkins v.* Chase *Home Mortg. Corp. (In re Maple Mortg.),* 81 F.3d 592, 596-597 (5th Cir. 1996) ruled that the funds held by the debtor/mortgage servicer were mortgage payments, net escrows, unearned fees and outstanding receivables.  The debtor did not own the underlying mortgages. Although the debtor had control over the funds, this fact does not convert the debtor's possessory interest into a legal or equitable interest. *Id*. Control means the unfettered right to use the funds and while there may be discretion over the account, there is no presumption that discretion constitutes unfettered discretion. *Id*. Since the debtor held the funds for the benefit of those to whom the money was owed, and the debtor held no equitable interest in the funds transferred to the adversary defendant, the court ruled that the transfers could not be avoided by the trustee. *Id*.

The sound reasoning of the *Contech* and *Jennings* cases should be applied here. The Trustee never pleads that the funds used to pay Advanced belonged to the Debtor. He fails to

allege that the Debtor had a legal and equitable interest in the transferred funds. There are no such allegations. The Amended Complaint is totally void of any such statement because the Trustee cannot in good faith make this allegation. Absent these allegations, the Trustee cannot sustain his claims for fraudulent transfer. *Gerium v. Glick,* 568 B.R. 634, 671 (In re Glick) (N.D. Ill. 2017) (stating that a claim for fraudulent transfer under either section 548(a)(1)(b), 544 (b) or 740 ILCS 160/5(a) must involve both a "transfer" and the transfer must involve "an interest of the debtor in the property," meaning property of the debtor.).

 Instead, the Trustee skirts the issue by alleging that the Debtor physically made the payments on behalf of others, from certain operating accounts belonging to the Debtor. (See, Am. Complt. ¶¶ 71, 73, 76, 83, 86). However, disbursing a payment on behalf of others for payment to their other entities' creditors, is not the same as paying one's own debt from one's own funds.

Taking the Trustee's allegations as true with all reasonable inferences, the Trustee admits the funds held by the debtor were held in trust for the benefit of third parties, property owners, other than itself, of numerous properties. In this capacity, the debtor acted as a "conduit or disbursing agent" for third party property owners, paying their creditors to satisfy their obligations, i.e. taxes, construction work.  In support of this factual conclusion, the Trustee makes the following admissions in its pleading[1]:

    a.  Debtor was engaged in the business of wholesale real estate investing, managing and development for itself and other companies.  (Am. Complt. ¶ 9, 12,)

---

[1] These allegations constitute judicial admissions, which are binding upon the Trustee. See, *Help Home Inc., v. Med. Capital, L.L.C.,* 260 F.3d 748, 753 (7th Cir. 2001) (ruling that judicial admissions are formal concessions in the pleadings made by a party and are binding upon the party making them.).

b.  Using American Residential Leasing Company LLC, as one example, debtor admits it acted as the property owners' management agent. The Debtor collected rent from residential tenants from which it was required to pay the owner a percentage, and pay the property owners' creditors for expenses associated with the property as well as taxes. From the amount collected, it received a commission. (Am. Complt. ¶¶ 12, 21-30).

c.  The Debtor performed these management services for American Residential and other entities in which the debtor was a member of the LLC, and for other third parties. See Exhibit B attached to the Am. Complaint. (Am. Complt. ¶19).

d.  The debtor admits that Advanced performed construction and rehab services to the properties the Debtor owned as well as other third parties. (Am. Complt. ¶¶ 21-30).

e.  The debtor admits that Advanced provided construction services on property either owned or managed by the Debtor for which Advanced was entitled to be paid. (Am. Complt. ¶¶ 19, 20, 73).

f.  The debtor paid Advanced for work performed on its properties and on properties belonging to third parties. (Am. Complt. ¶¶ 20, 55, 71 73).

g.  The Trustee attaches Exhibits A & B to its Amended Complaint[2] which allegedly sets forth the amount of the payments, the check number, date and designates Debtor's bank account upon which the checks were drawn. (Ex. A). Exhibit B lists the owner of the properties for which invoices were submitted and paid.

h.  Exhibit B shows that the Debtor made payments on behalf of and for the benefit of many different entities, including entities where the Debtor did not hold a

---

[2] Exhibits attached to a complaint are a part of the complaint and will be considered when determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 10(c); See also, *Thompson v. Illinois Dept. of Professional Regulation,* 300 F.3d 750, 753 (7th Cir.).

membership interest. For example, the Debtor paid Advance for work done at a properties owned by Kiran Kumar R. Mangalpally and Kalpana Mangalpally, a Victor Vyas, a Theadosia M. Van Arkel, and by American Residential, Next Level Properties LLC, Tapan Manlar, Mack Investments I LLC,  (See, Ex. B., Mangalpally, p. 3, and other references within the 277 pages; Vyas p. 3, 6, and other references within the 277 pages; VanArkel P. 12, 16; American Residential, p. 9 and other references within the 277 pages, Manlar, p. 15; Mack Industries I LLC, throughout 1-277; Chicago Title Land Trust Co., Trustee dated 3/14/13 NO. 8002361345, appears throughout pgs. 1-277.)

Taking these allegations as true along with all reasonable inferences therefrom in the light most favorable to the Trustee, the Trustee has pled himself out of court as to the fraudulent conveyance claims, (constructive or actual) because the Trustee fails to, and cannot, plead one of the essential elements of these claims: that there was a transfer of the Debtor's property. [3] Here, the Trustee admits that the Debtor was acting as a managerial agent for third parties/property owners. (See Exhibit B). Acting as a managerial agent is consistent with the Debtor's business purpose of real estate management, investment and development. Using its management agreement with American Residential as an example, the Trustee admits the Debtor was responsible for leasing property, collecting tenants' rents, disbursing money to pay the owner's debts, such as taxes and maintenance. The monies used to pay Advanced were not generated by the Debtor's business, but rather represented tenants' rent monies and was intended to be used to

---

[3] A party can plead oneself out of court by alleging facts which demonstrate that he has no legal claim. *Bergstrom v. Northeast Illinois Regional Commuter R.R. Corp.,* 2004 WL 1146626, at *2 (N.D. Ill. May 19, 2004).

pay the property owners' debts, such as Advanced for construction work performed at American Residential properties.

American Residential is one example but illustrates the relationship between the debtor and the other property owners listed on Exhibit B. The undisputed fact that the debtor acted as a managerial agent is further evidenced by a companion adversary case styled as *Peterson v. Jan McLean, et. al.* 19 A 0043 [ECF    ]. In the *McLean* case, the Trustee seeks to avoid payments to the defendants made by the Debtor, an affiliate of Mack Industries, Inc. and Mack Industries, Inc., the same debtor as in the instant case. The Trustee alleges that Mack Industries Inc., was acting as property manager for the McLean defendants.[4]  It is not reasonable to infer that the debtor used its own funds to pay construction costs to Advanced for work done on properties owned by third party owners listed on Exhibit B, such as Kiran Kumar R. Mangalpally and Kalpana Mangalpally, Victor Vyas, Theadosia M. Van Arkel, and Next Level Properties LLC, and Tapan Manlar: all owners with no alleged ownership interest held by the debtor, out of spite to American Residential. Further, it is even more disingenuous to infer that the debtor, if they fronted the costs, did not recoup these funds from the owners listed on Exhibit B.

The same inference that the debtor acted as a managerial agent, disbursing payments for other property owners, applies equally to payments made on behalf of the other named Mack companies listed on Exhibit B and identified as beneficial owners of certain land trusts holding legal title for properties owned by these other Mack companies. (See Am. Complt. ¶¶ 79-81 and Ex. B.)  Despite the Trustee's attempts to insinuate otherwise and blur corporate distinctions, the other Mack companies are separate limited liability companies incorporated in Illinois.  See, *Peabody-Waterside Development, LLC v. Islands of Waterside, LLC,* 2013 IL App (5th) 120490 ¶

---

[4] The court may take judicial notice of pleadings. *Palay v. United States,* 349 F.3d 418, 425 n. 5 (7th Cir.2003);  *In re Williams,* No. ADV 10 A 1663, 2011 WL 883922, at *1 (Bankr. N.D. Ill. Mar. 11, 2011)

9 (stating that a limited liability company is a legal entity distinct from its members.) The land trusts are separate legal entities holding legal title to certain properties. Based on the allegations, it is inferred that the debtor also acted as a disbursing agent for these companies.

The Trustee's allegations demonstrate that the funds in the debtor's operating accounts were held in trust for the benefit of the owners and the debtor to disburse, as the owners' agent, for expenses incurred in managing, leasing, or developing the multitude of properties.  Similar to the debtors in *Contech* and *Jennings* cases, the debtor here acted as a disbursing agent for others, holding the funds in its accounts for the benefit of the owners' creditors. The debtor had no legal or equitable interest in the funds in the two operating accounts used to pay Advanced on behalf of all the property owners listed on Exhibit B. Accordingly, the Trustee admits the funds used to pay Advanced were not property of the debtor's estate and thus, cannot be avoided under sections 544 or 548 of the Bankruptcy Code.

### If the Court dismisses the Amended Complaint, the Trustee should not be allowed to amend

Two bites at the apple is more than enough. The Amended Complaint is the Trustee's second attempt to plead claims against Advanced however, the Trustee failed to cure the prior pleading defects apparent in the original complaint which was dismissed by this court.  The Trustee again failed to satisfy the strict pleading requirements of Rule 9(c) by providing the required information for each transaction underlying the lump sum payments alleged as the fraudulent transfers.

Compounding the deficiencies, the Trustee relied on Exhibits, of over 277 pages, listing invoices paid, which contradicted his own allegations in the Amended Complaint. Since the contradictory information in the Exhibits trump the pleading's allegations, the Trustee plead himself out of court as to pleading and proving three essential elements of his claims: 1) the

property transferred was the property of the debtor's estate; 2) the debtor did not receive reasonably equivalent value; and 3) all payments in question were made to Advanced.

Here, this Court should exercise its broad discretion to deny leave to amend when an amendment would be futile. See, *In re Glick*, supra, at 679-680. An amendment is futile when the plaintiff's [Trustee] claim cannot succeed as a matter of law. *Id.* It is apparent that the Trustee cannot plead claims for fraudulent conveyance (actual or constructive) even after attaching its "best evidence" of payments to Advanced. Further, Advanced should not have to incur continuous and unnecessary attorneys' fees and costs defending against insufficient pleadings. See, *Graue,* supra at 991; *Bell,* supra at 817. At this point, the Trustee has exhausted his opportunities to amend and should not be granted leave to amend. The action should be dismissed with prejudice.

WHEREFORE, Defendant, ADVANCED HOME REMODELING INC., prays that the Motion to Dismiss Counts I and II pursuant to Fed. R. Civ. P. 12 (b)(6) be granted and the Trustee's Amended Complaint dismissed with prejudice and award Defendant any and all other relief the Court deems just and equitable.

Respectfully submitted,

Advanced Home Remodeling Inc.

By:     /s/ *Pamela Leichtling*
One of its Attorneys

Pamela J. Leichtling # 6183213
Jill Sidorowicz # 62299380
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, IL 60603
312-431-1455
312-431-1456 fax
pleichtling@noonanandlieberman.com
jsidorowicz@noonanandlieberman.com