2084-1

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Mack Industries, Ltd. *et al.,* | ) | Bankruptcy No. 17-09308 |
| | ) | (Jointly Administered) |
| Debtors.[1] | ) | |
| ———————————————— | ) | Honorable Carol A. Doyle |
| | ) | |
| Ronald R. Peterson, as Chapter 7 | ) | |
| Trustee for Mack Industries, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 19-00578 |
| | ) | |
| Advanced Home Remodeling, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER TO AMENDED COMPLAINT

Defendant, Advanced Home Remodeling Inc. ("Advanced"), by and through its attorneys, Pamela J. Leichtling and Jill Sidorowicz, hereby submits its Answer to Count III of Plaintiff's Amended Complaint as follows:

1.      Mack Industries Ltd. (the "Debtor") transferred $16,504,649.79 to Advanced Home Remodeling Inc. ("Advanced") not for its own benefit, but for the benefit of other entities. The Debtor got no value for the transfers, which it made while insolvent and as part of a scheme to hinder, delay, and defraud its creditors, including American Residential Leasing Company LLC.  Therefore, Ronald R. Peterson, as chapter 7 trustee for the Debtor, (the "Trustee") seeks to avoid and recover those transfers for the estate's benefit.

---

[1] The Debtors, with their respective bankruptcy case numbers, are as follows:  Mack Industries, Ltd. (17-09308); Oak Park Avenue Realty, Ltd. (17-16651): Mack Industries II, LLC (17-16859); Mack Industries III, LLC (17-

1

**ANSWER:** **Advanced admits the Trustee seeks to avoid and recover transfers for the estate's benefit, but denies the Trustee is entitled to the relief sought as alleged in Paragraph 1. Answering further, Advanced does not have a response to the remaining allegations as these allegations constitute legal conclusions to which no response is required. To the extent a response is required, Defendant denies said allegations.**

## JURISDICTION AND VENUE

2.      This adversary proceeding arises in the chapter 7 bankruptcy case of Mack Industries Ltd., pending before this Court as case number 17-09308.

**ANSWER:** **Advanced admits the allegations in Paragraph 2.**

3.      Pursuant to 28 U.S.C. § 1334(b), this Court has subject matter jurisdiction over this proceeding, which is referred here pursuant to 28 U.S.C. § 157(b) and Local Rule 40.3.1(a) of the United States District Court for the Northern District of Illinois.

**ANSWER:** **The allegations contained in Paragraph 3 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced admits this Court has subject matter jurisdiction.**

4.      This is a core proceeding under 28 U.S.C. § 157(b)(2)(F) and (H), and this Court has constitutional authority to enter final judgments and orders herein.  If a court determines that any portion of this proceeding is not a core proceeding or that a bankruptcy judge does not have constitutional authority to enter final judgments in this proceeding, the Trustee consents, pursuant to 28 U.S.C. § 157(c), to a bankruptcy judge hearing and finally determining the proceeding and entering appropriate orders and judgments.

**ANSWER:** **The allegations contained in Paragraph 4 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced admits this is a core proceeding.**

---

17106); Mack Industries IV, LLC (17-17109); Mack Industries V, LLC (18-03445); and Mack Industries VI, LLC (18-03451)

5.      This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. §§ 1408 and 1409.

**ANSWER:      The allegations contained in Paragraph 5 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced admits that venue is proper.**

## GENERAL ALLEGATIONS

**1.      The McClelland family entities.**

6.      The Debtor was created in 1998 and was owned by James K. McClelland.

**ANSWER:      Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 6, and as such denies the same.**

7.      James K. McClelland and his son James H. McClelland managed the Debtor.

**ANSWER:      Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 7, and as such denies the same.**

8.      One of the Debtor's main lines of business was flipping houses:   the Debtor would acquire real estate, rehab it, and then sell it or rent it to generate income.

**ANSWER:      Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 8, and as such denies the same.**

9.      Prior to 2013, the McClellands operated the real estate business in the Debtor's name, except for certain lines of business or opportunities they pursued in the names of Mack Investments I LLC, an entity owned by James K. McClelland and created in 2009; 2300-16 S. Central LLC, an entity owned by James H. McClelland and created in 2011; and Mack Property Group Ltd., an entity created in 2009.

**ANSWER:      Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 9, and as such denies the same.**

10.      In 2013, however, the McClelland family began to create new entities owned directly or indirectly by the McClelland family.

3

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 10, and as such denies the same.**

11.    The McClelland family entities included Mack Industries II LLC, Mack Industries III LLC, Mack Industries V LLC, Mack Investments I LLC, Mack Investments II LLC, Wheelhouse Investments LLC, Mack LOC I LLC, and Mack LOC II LLC.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 11, and as such denies the same.**

12.    The Debtor and the McClelland family entities engaged in the business of wholesale real estate investing, management, and development.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 12, and as such denies the same.**

**2.    Advanced's relationship to the McClelland family entities.**

13.    Advanced was created in January 2013.

**ANSWER:**    **Advanced admits the allegations contained in Paragraph 13, however Advanced further states that it was involuntarily dissolved on June 8, 2018 and as such is no longer in operation.**

14.    Advanced is in the business of renovating properties that others owned.

**ANSWER:**    **Advanced admits that it was in the business of renovating properties and further states that it was involuntarily dissolved on June 8, 2018.**

15.    Advanced's president is Michael Marion.

**ANSWER:**    **Advanced admits that Michael Marion was its president.   However, Advanced was involuntarily dissolved on June 8, 2018.**

16.    Marion was a close associate of the McClelland family entities.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 16, and as such denies the same.**

17.    Marion often used the "ibuymack.com" email address when conducting Advanced's business.

4

**ANSWER:** **Advanced admits Marion, as President of Advanced used the "ibuymack.com" email address when conducting business with the Debtor as per the Debtor's request for all vendors.**

18.     On Advanced's page on the Illinois Secretary of State's website, two addresses are listed for Marion.  One is 13121 Steeplechase Dr., New Lenox, IL 60451, a property that Marion acquired from Investments I in October 2015.  The other is 17669 Peacock Lane, Tinley Park, IL 60487, which, prior to the Debtor's bankruptcy, was owned at various times by Mack Investments I LLC, the Debtor, and Mack Industries VI LLC.

**ANSWER:** **Advanced admits that the two addresses listed in Paragraph 18 are listed for Advanced on the Illinois Secretary of State's website. However, Advanced lacks sufficient knowledge to either admit or deny the remaining allegations contained in Paragraph 18, and as such denies the same.**

19.     Advanced provided services to improve real estate owned by the Debtor, by the McClelland family entities, and others.

**ANSWER:** **Advanced admits it provided services to improve real estate but lacks sufficient knowledge to either admit or deny the allegations as to the owners of the real estate and as such denies same.**

20.     As described in detail in this complaint, the Debtor paid Advanced to improve real estate that the Debtor did not own as part of a scheme to dissipate its assets to hinder, delay, and defraud American Residential Leasing Company LLC and to benefit the McClellands and their other entities.

**ANSWER:** **Advanced admits the Debtor paid them for actual work performed by Advanced. The remaining allegations contained in Paragraph 20 state legal conclusions of law, such that no response is required. To the extent that a response is required, Advanced denies the same.**

**3.     The relationship between the Debtor and American Residential.**

21.     One line of business that the Debtor pursued was managing properties owned by American Residential Leasing Company LLC.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 21, and as such denies the same.**

22.    In December 2012, the Debtor entered into a Master Lease Agreement with American Residential.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 22, and as such denies the same.**

23.    Under the Agreement, the Debtor leased several hundred residential properties from American Residential.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 23, and as such denies the same.**

24.    Between December 2012 and January 2014, Mack and American Residential amended their Agreement 20 times to add additional properties.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 24, and as such denies the same.**

25.    Under the Agreement, the Debtor was to sublease the American Residential properties to residential tenants, and the Debtor was obligated to maintain the properties, to pay American Residential certain rental and other fees each moth, and to pay all property taxes levied against the properties.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 25, and as such denies the same.**

26.    Under the Agreement, the Debtor was obligated to pay American Residential monthly rents calculated from an annual base rent (the "Base Monthly Rental") and quarterly rents based on a percentage of the Debtor's annual gross revenues (the "Quarterly Percentage Rental").

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 26, and as such denies the same.**

27.     In January 2014, the Base monthly Rental was $405,878.13.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 27, and as such denies the same.**

28.     The Base Monthly Rental increased by up to 3% annually, so it increased to $418,054.49 in February 2014, $430,595.11 in January 2015, and $444,514.00 in January 2016.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 28, and as such denies the same.**

29.     The Quarterly Percentage Rental amounts were estimated quarterly based on written statements (the "Quarterly Statements") that the Debtor was supposed to provide American Residential, setting forth the Debtor's revenues for the previous quarter.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 29, and as such denies the same.**

30.     At the end of each year, the Debtor was also required to provide a written statement setting forth its actual gross revenue for the prior year and to pay any deficiency in the Quarterly Percentage Rental amounts actually paid during the prior year.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 30, and as such denies the same.**

**4.      The Debtor threatens to dissipate assets if American Residential does not renegotiate the parties' contract.**

31.     Beginning in summer 2014, the Debtor claimed that it was incapable of meeting its obligations under the Agreement and requested that the Agreement be modified to reduce those obligations.  One of the Debtor's primary negotiators was Eric Workman, the Debtor's Vice President of Sales and Marketing.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 31, and as such denies the same.**

32.     On July 8, 2014, Workman sent an email to Christopher J. Byce (formerly Vice President, Investments, of American Residential's prior parent company) stating that "the overall economics of the Mack-ARP relationship … is not performing at a profitability level that is sustainable to Mack."

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 32, and as such denies the same.**

33.     Later, on December 5, 2014, James H. McClelland, a Debtor representative and the son of the Debtor's owner, submitted a proposal to modify the Agreement via letter to Byce representing that "any substantial changes in the [proposed] terms will be untenable insofar as Mack's ability to perform under a revised agreement.  Mack has exhausted all avenues to borrow the money to pay the back taxes, as the time frame and usage of funds makes this type of loan next to impossible for it to acquire."

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 33, and as such denies the same.**

34.     In connection with the Debtor's request to modify the agreement, its representatives made several statements revealing the Debtor's intent to engage in fraudulent conduct if American Residential did not agree to the Debtor's proposed terms.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 34, and as such denies the same.**

35.     Specifically, in June 2014, Workman told Byce that, absent a modification, the Debtor would transfer its assets to related entities for nothing in return to hinder American Residential's ability to exercise its legal remedies as a creditor or otherwise.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 35, and as such denies the same.**

36.     During the negotiations with American Residential, Workman also told Byce that the Debtor's special relationships with local authorities in Cook County and surrounding areas would prevent American Residential from exercising management and control over its properties.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 36, and as such denies the same.**

37.     American Residential and the Debtor were not able to agree on a modification to the Agreement.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 37, and as such denies the same.**

38.     The relationship between American Residential and the Debtor continued to deteriorate during the negotiations and after the negotiations failed.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 38, and as such denies the same.**

39.     By September 2014, the Debtor stopped making the full Base Monthly Rental Payments, and it made no payments at all in eight months between September 2014 and February 2016.  American Residential calculates that the Debtor owes more than $4.7 million for unpaid rent.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 39, and as such denies the same.**

40.     In 2014, the Debtor stopped paying property taxes on American Residential's properties for the years 2013 and forward.  American Residential calculates that the Debtor owes more than $6.5 million for these taxes.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 40, and as such denies the same.**

41.     American Residential sent the Debtor a Notice of Default on December 2, 2014.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 41, and as such denies the same.**

42.    Eventually, on March 21, 2016, American Residential filed a complaint against the Debtor and others in Illinois state court.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 42, and as such denies the same.**

**5.    The parties do not agree on a modification to the Agreement, so the Debtor dissipates its assets.**

43.    American Residential and the Debtor were not able to agree on a modification to the Agreement.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 43, and as such denies the same.**

44.    Even before making its threats to American Residential, the Debtor began preparing for a possible breakdown in the business relationship.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 44, and as such denies the same.**

45.    In the months leading up to and during the negotiations with American Residential, the Debtor had already begun dissipating its assets.  True to its threat to American Residential, the Debtor continued that dissipation when the negotiations failed.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 45, and as such denies the same.**

46.    Prior to 2013, the McClellands ran almost the entire real estate business in the Debtor's name.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 46, and as such denies the same.**

47.    In 2013, however, the McClelland family began to create new entities and to divert business opportunities and assets from the Debtor to those entities.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 47, and as such denies the same.**

48. In 2013, the McClellands created at least 15 new entities. In 2014, they created at least four, in 2015, at least six; and in 2016, at least two.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 48, and as such denies the same.**

49. The Debtor owned five and these entities: Mack Industries II LLC, Mack Industries III LLC, Mack Industries IV LLC, Mack Industries V LLC, and Mack Industries VI LLC.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 49, and as such denies the same.**

50. The remaining new entities were owned by James K. McClelland, James H. McClelland, or both.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 50, and as such denies the same.**

51. The McClellands used these new entities to pursue business opportunities that the Debtor would have pursued in the past.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 51, and as such denies the same.**

52. Although the Debtor still owned some real estate after 2013, the vast majority of real estate acquired for flipping was acquired by the new entities. In addition, the Debtor transferred real estate from itself to these new entities.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 52, and as such denies the same.**

53.    By acquiring real estate and other assets in the name of the new entities and transferring real estate from the Debtor to the new entities, the McClelland family reduced the assets that the Debtor had that could be collected by American Residential.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 53, and as such denies the same.**

54.    Compounding the situation, the Debtor drew down on its own assets to benefit these other entities.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 54, and as such denies the same.**

55.    The Debtor paid contractors to work on and improve the real estate owned by the other entities.  It brought supplies that would be used only to improve real estate owned by the other entities.  It paid bank loans incurred by the other entities.  It paid for other services, such as lawyers or tax advisors, to benefit the other entities.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 55, and as such denies the same.**

56.    The Debtor did not get any value for making these payments.  Instead, the parties that benefitted were the other entities and, ultimately, the McClellands.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 56, and as such denies the same.**

57.    From 2013 to 2017 – the period in which the Debtor claimed that it could not pay American Residential what it owed under the Agreement – the McClelland family extracted at least $10.7 million in cash from the Debtor and the other entities.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 57, and as such denies the same.**

58.    By spending its own money and getting nothing in return, the Debtor further dissipated its assets, further hindering, delaying and defrauding American Residential while the McClellands benefitted.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 58, and as such denies the same.**

59.    The Debtor also concealed its dissipation from American Residential.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 59, and as such denies the same.**

60.    The Debtor was supposed to provide American Residential with Quarterly Statements detailing its income, but the Debtor stopped providing those reports after June 2014.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 60, and as such denies the same.**

61.    In 2016, after the Debtor defaulted on the Agreement, American Residential tried to take over management of its properties.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 61, and as such denies the same.**

62.    The Debtor, however, prevented American Residential from doing so by refusing to provide subtenant and property information that American Residential requested and was entitled to under the Agreement.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 62, and as such denies the same.**

63.    The Debtor's efforts to dissipate its assets to hinder, delay, and defraud American Residential continued from 2013 to March 2017, when the Debtor filed for bankruptcy.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 63, and as such denies the same.**

64.    The Debtor's efforts to render itself insolvent were successful.

13

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 64, and as such denies the same.**

65.     The Debtor's books and records reflect that, on March 24, 2017, the date it filed for bankruptcy, the Debtor had assets of $56.4 million and liabilities of $71.2 million on a cash basis.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 65, and as such denies the same.**

66.     The Debtor's books and records reflect that, in the year prior to March 24, 2017, the Debtor had net income of negative $7,270,679.43 on a cash basis.

**ANSWER:** **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 66, and as such denies the same.**

67.     Creditors existed with standing to bring an action against the Debtor to avoid the obligations and transfers described in this complaint under applicable non-bankruptcy law, including American Residential and the Internal Revenue Service.  To the extent the IRS is a creditor, the period for avoiding obligations and transfers is at least 10 years.

**ANSWER:** **The allegations contained in Paragraph 67 state legal conclusions of law, such that no response is required. To the extent that a response is required, Advanced denies the same.**

68.     During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional obligations or transfers made to or for the benefit of Advanced during the period for which obligations or transfers can be avoided.  It is the Trustee's intention to avoid and recover all obligations and transfers the Debtor made that are avoidable under 11 U.S.C. §§ 544 and 548.  The Trusteed reserves his right to amend his complaint to include:  (i) further information regarding the obligations and transfers; (ii) additional obligations and transfers; (iii) modifications of and/or revisions to any defendant's name; (iv) additional defendants; and/or (v) additional causes of action or legal theories, if applicable, (collectively, the :Amendments") that

may become known to the Trustee at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to the date of the original complaint.

**ANSWER:**   **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 68, and as such denies the same.**

**COUNT 1 – AVOIDANCE AND RECOVERY OF CONSTRUCTIVE FRAUDULENT TRANSFERS**
**740 ILCS 160/5(a)(2), 6(a), and 8(a),**
**and 11 U.S.C. §§ 544(b)(1), 548(a)(1)(B), and 550(a)**

69.     The Trustee incorporates the previous allegations of this complaint as though fully set forth in this count.

**ANSWER:**   **Advanced incorporates its responses as to Paragraphs 1-68 as though fully set forth herein.**

70.     The Trustee pleads this count in the alternative to the extent the relief or the allegations contradict anything else contained in this complaint.

**ANSWER:**   **The allegations contained in Paragraph 70 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

**1.      The Debtor pays Advanced to improve real estate owned by other entities.**

71.     Between March 10, 2013, and January 3, 2017, Advanced issued invoices to the Debtor for services to improve parcels of real estate that the Debtor did not own, and the Debtor paid those invoices.

**ANSWER:**   **Advanced admits that it issued invoices to the Debtor for services to improve parcels of real estate at the request of the Debtor and the Debtor paid those invoices. Advanced lacks sufficient knowledge to either admit or deny the remaining allegations as to ownership contained in Paragraph 71 and as such denies the same.**

72.    As a general rule, each transaction was for a specific parcel, and the parcel's address was specifically identified on Advanced's invoice, in the Debtor's books and records, and on related documents.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 72, and as such denies the same.**

73.    After Advanced supplied the services, the Debtor paid Advanced's invoices for the services.

**ANSWER:    Advanced admits the Debtor paid Advanced's invoices for services rendered.**

74.    A list of each transfer that the Debtor made to Advanced is attached as Exhibit A.

**ANSWER:    Advanced admits that Debtor attaches an Exhibit A to the Amended Complaint but lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 74, and as such denies the same.**

75.    Each transfer was in payment of one or more invoices that Advanced submitted to the Debtor.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 75, and as such denies the same.**

76.    In some cases, the Debtor would transfer the entire amount of an invoice to Advanced.  In other cases, the Debtor would transfer only a portion of the invoice, transferring additional portions later as the project at issue progressed to completion.

**ANSWER:    Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 76, and as such denies the same.**

77.    A list of the invoices paid by the Debtor's transfers, broken down to show the property at issue and the property's owner for each portion of the invoice, is attached as Exhibit B.

**ANSWER:    Advanced admits that Debtor attaches an Exhibit B to the Amended Complaint but lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 77, and as such denies the same.**

78.     The "Owner" column on Exhibit B identifies the owner of the real estate on the

invoice date for each property.

**ANSWER:     Advanced lacks sufficient knowledge to either admit or deny the allegations
contained in Paragraph 78, and as such denies the same.**

79.     The owner of the beneficial interest in Chicago Title Land Trust dated Mar. 14,

2013, No. 8002361345 is Mack Industries II LLC.

**ANSWER:     Advanced lacks sufficient knowledge to either admit or deny the allegations
contained in Paragraph 79, and as such denies the same.**

80.     The owner of the beneficial interest in Chicago Title Land Trust dated Apr. 9,

2013, No. 8002361677 is Mack Industries III LLC.

**ANSWER:     Advanced lacks sufficient knowledge to either admit or deny the allegations
contained in Paragraph 80, and as such denies the same.**

81.     The owner of the beneficial interest in Chicago title Land Trust dated Oct. 25,

2016, No. 8002372790 is Mack Industries II, LLC.

**ANSWER:     Advanced lacks sufficient knowledge to either admit or deny the allegations
contained in Paragraph 81, and as such denies the same.**

82.     There are two types of transfers on Exhibit A:  bill payments and checks.  There

are two types of invoices on Exhibit B:  bills and check payments.  (There are also credits noted

on Exhibit B).  At times, the Debtor would enter an invoice as a bill in its bookkeeping software,

and the later transfer to pay that invoice would be booked as a bill payment. Other times, the

Debtor would not enter an invoice as a bill, so the later transfer would be booked as a check, and

the invoices paid are noted as check payments in Exhibit B.

**ANSWER:     Advanced lacks sufficient knowledge to either admit or deny the allegations
contained in Paragraph 82, and as such denies the same.**

83.    As detailed on Exhibit A, the Debtor made 201 transfers on account of 9,526 invoices totaling $16,504,649.79 on account of properties that the Debtor did not own.  This is 95% of Advanced's invoices that the Debtor paid during the time period at issue in this complaint.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 83, and as such denies the same.**

84.    The last seven transfers that the Debtor made to Advanced were particularly egregious.  Between October 7, 2016, and January 3, 2017, the Debtor made seven payments of exactly $30,000 each.  The transfers were not on account of any invoice for contractor services, and the Debtor had never before made transfers to Advanced in large, round numbers like this.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 84, and as such denies the same.**

85.    Instead, the Debtor described the transfers were "loan advances" in its books and records, advanced on account of a note receivable owned by James H. McClelland, the son of the Debtor's owner and a manager of the Debtor.  The $210,000 was transferred to further deplete the Debtor's assets and to benefit the McClelland family.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 85 and as such denies the same. Answering further, the allegations contained in Paragraph 85 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

**2.    The Debtor did not receive reasonably equivalent value in exchange for paying Advanced.**

86.    The invoices and payments at issue in this Complaint were for parcels of real estate that the Debtor did not own.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 86, and as such denies the same.**

87.    Instead, the real estate that Advanced improved was owned by Mack Industries II LLC, Mack Industries III LLC, Mack Industries V LLC, Mack Investments I LLC, Mack Investments II LLC, Wheelhouse Investments LLC, Mack LOC I LLC, Mack LOC II LLC, and others.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 87, and as such denies the same.**

88.    Because the Debtor did not own the real estate that Advanced improved, the Debtor did not benefit at all from Advanced's services.

**ANSWER:**    **The allegations contained in Paragraph 88 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

89.    By incurring each obligation to Advanced and paying the resulting invoice, the Debtor transferred away assets and got no benefit in return.

**ANSWER:**    **The allegations contained in Paragraph 89 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

90.    Therefore, the Debtor did not receive a reasonably equivalent value for the transfers and obligations detailed in this complaint.

**ANSWER:**    **The allegations contained in Paragraph 90 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

**3.    The Debtor was insolvent at the time it incurred the obligations and made the transfers to Advanced.**

91.    The obligations and transfers at issue in this complaint occurred between March 10, 2013, and January 3, 3017.

**ANSWER:**    **The allegations regarding the Debtor's insolvency state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same. Advanced lacks sufficient knowledge to**

**either admit or deny the allegations contained in Paragraph 91, and as such denies the same.**

92.     The Debtor's books and records reflect that, on July 31, 2014, Mack's liabilities

exceeded its assets by $2,016,009.01.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 92 and as such denies the same. Answering further, the allegations contained in Paragraph 92 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

93.     The Debtor's liabilities exceeded its assets on each date after July 31, 2014, until

it filed for bankruptcy on March 24, 2017.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 93 and as such denies the same. Answering further, the allegations contained in Paragraph 93 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

94.     The Debtor's books and records reflect that, on March 24, 2017, the Debtor's

liabilities exceeded its assets by $14,794,001.84.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 94 and as such denies the same. Answering further, the allegations contained in Paragraph 94 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

95.     The Debtor's books and records reflect that, each month between March 2013 and

July 2014, Mack's assets exceeded its liabilities by an average of just $1,527,932.57.  During

that period, the Debtor's assets each month averaged just $30,141,277.82 while its liabilities

each month averaged $28,613,345.25.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 95 and as such denies the same. Answering further, the allegations contained in Paragraph 95 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

96.     The Debtor's earnings decreased significantly between March 2013 and July 2014, further demonstrating its fragile financial position.  The Debtor's average monthly net income for 2013 was $236,456.86, but for 2014 it was negative $528,550.83.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 96, and as such denies the same.**

97.     Because the Debtor was losing money so rapidly, it was not generating sufficient profits to sustain its operations, particularly because its equity was only about 5% of the value of its assets.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 97 and as such denies the same. Answering further, the allegations constitute the opinions of the pleader, not facts, and as such no response is required. If a response is required, Advanced denies same.**

98.     In fact, because the Debtor was losing money, by July 31, 2014, the Debtor was balance sheet insolvent and remained so until it filed for bankruptcy.

**ANSWER:**     **The allegations contained in Paragraph 98 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

99.     During the time period at issue in this complaint – that is, between March 10, 2013, and March 24, 2017 – Mack's net income was negative $19,226,160.72.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 99, and as such denies the same.**

100.     During the time period at issue in this complaint, the Debtor was incurring debts and was not paying those debts as they became due.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 100, and as such denies the same.**

101.     The Debtor's accounts payable had the following ages on the following dates:

| Date | Current | 1-30 days | 31-60 days | 61-90 days | >90 | Total |
|------|---------|-----------|------------|------------|-----|-------|
| 3/24/17 | $88.95 | $33,430.70 | $104,680.13 | $130,236.00 | $1,095,240.77 | $1,363,676.55 |
| 3/24/16 | 24,381.64 | 698,503.00 | 135,109.83 | 488,291.47 | 486,178.82 | 1,832,464.76 |
| 3/24/15 | 14,860.23 | 875,471.28 | 16,842.69 | 12,352.79 | 151,191.69 | 1,070,718.68 |
| 3/24/14 | 60,911.57 | 496,109.35 | 137,838.42 | 90,254.86 | 38,243.01 | 823,357.21 |
| 3/24/13 | 15,141.03 | 911,193.57 | 308,858.07 | 14,481.28 | 19,697.12 | 1,269,471.07 |

**ANSWER:**   **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 101, and as such denies the same.**

### COUNT 2 – AVOIDANCE AND RECOVER OF ACTUAL FRAUDULENT TRANSFERS
### 740 ILCS 160/5(a)(1) and 8(a)
### and 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A), and 550(a)

102.   The Trustee incorporates the previous allegations of this complaint as though fully set forth in this count.

**ANSWER:**   **Advanced incorporates its responses as to Paragraphs 1-101 as though fully set forth herein.**

103.   The Trustee pleads this count in the alternative to the extent the relief or the allegations contradict anything else contained in this complaint.

**ANSWER:**   **The allegations contained in Paragraph 103 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

104.   As described above, the Debtor engaged in a scheme to hinder, delay, and defraud American Residential by transferring away its assets, reducing what American Residential could collect and improving the position of the McClellands and their other entities.

**ANSWER:**   **The allegations contained in Paragraph 104 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

105.    As part of its scheme to hinder, delay, and defraud American Residential, the Debtor paid Advanced $16,504,649.79 to improve real estate owned by Mack Industries II LLC, Mack Industries III LLC, Mack Industries V LLC, Mack Investments I LLC, Mack Investments II LLC, Wheelhouse Investments LLC, Mack LOC I LLC, Mack LOC II LLC, and others, as described in detail.

**ANSWER:**    **The allegations contained in Paragraph 105 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

106.    Each obligation incurred and payment to Advanced reduced the Debtor's assets, leaving less for American Residential to collect.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 106, and as such denies the same.**

107.    Each obligation incurred and transfer to Advanced improved real estate owned by other entities, benefitting the McClelland family at the expense of American Residential.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 107, and as such denies the same.**

108.    The Debtor did not disclose the transactions with Advanced to American Residential.  The Debtor stopped providing the required disclosures to American Residential in June 2014.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 108, and as such denies the same.**

109.    The Debtor incurred the obligations and made the transfers between March 2013 and January 2017.  American Residential issued a notice of default in December 2014 and sued the Debtor on March 21, 2016.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 109, and as such denies the same.**

110.    As described in detail above, the Debtor did not get any value for incurring the obligations or making the payments to Advanced because it did not own the real estate that Advanced improved.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 110 and as such denies the same. Answering further, the allegations state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

111.    As described in detail above, the Debtor was insolvent at the time it incurred the obligations and made the transfers to Advanced.

**ANSWER:**    **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 111 and as such denies the same. Answering further, the allegations state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

## AFFIRMATIVE DEFENSES AS TO ALL COUNTS

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted because the Debtor did not have an interest in the property transferred and does not constitute property of the Debtor's estate.

### SECOND AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted because the Debtor was not insolvent.

### THIRD AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted because no fraudulent scheme existed or an intent to defraud in relation to the Defendant.

### FOURTH AFFIRMATIVE DEFENSE

The Trustee cannot recover any transfers from Defendant because to the extent any such transfer is avoided, Defendant was a transferee that took for value in good faith without knowledge of the voidability of such transfer and/or was an immediate or mediate good faith transferee of such transferee and such transfer is protected from recover by 11 U.S.C. § 550(b).

### FIFTH AFFIRMATIVE DEFENSE

The Trustee cannot avoid transfers to Defendant under section 548 of the Bankruptcy Code because any such transfers were taken for value and in good faith and are protected from avoidance by 11 U.S.C. § 548(c) and or 740 ILCS 160/9(a), as applicable.

### SIXTH AFFIRMATIVE DEFENSE

The Trustee's claims are barred by applicable statutes of limitations including 11 U.S.C. § 546 and 740 ILCS 160/10.

### SEVENTH AFFIRMATIVE DEFENSE

The Trustee cannot avoid the transfers to Defendant because the Debtor received reasonably equivalent value.

### EIGHTH AFFIRMATIVE DEFENSE

The Trustee cannot avoid the transfers to Defendant received reasonably equivalent value because the Debtor and their related entities, are alter egos of each other and constitute a single enterprise.

### NINTH AFFIRMATIVE DEFENSE

Defendant asserts all rights of recoupment recovery, and setoff.

### TENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to amend and supplement this list of affirmative defenses as

necessary through ongoing discovery.

### COUNT III – AVOIDANCE AND RECOVERY PREFERENCE
### 11 U.S.C. §§ 547 and 550(a)

112.   The Trustee incorporates the previous allegations of this complaint as though

fully set forth in this count.

**ANSWER:**   **Advanced incorporates its responses as to Paragraphs 1-68 as though fully set forth herein. As to paragraphs 69-111, Advanced stands on its 12(b)(6) Motion to Dismiss Counts I and II and makes no response as to these allegations.  If a response is required, Advanced denies same.**

113.     The Trustee pleads this count in the alternative to the extent the relief or the allegations contradict anything else contained in this complaint.

**ANSWER:**     **The allegations contained in Paragraph 113 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

114.     The Debtor filed for bankruptcy on March 24, 2017.

**ANSWER:**     **Advanced admits the allegations contained in Paragraph 114.**

115.     On January 3, 2017, Advanced issued a bill to the Debtor for $30,000, describing the invoice as a "loan advance."

**ANSWER:**     **Advanced denies the allegations of Paragraph 115.**

116.     As described above in Count 1 and in Exhibit A, on January 3, 2017 – within 90 days prior to the petition date – the Debtor transferred $30,0000 to Advanced from its account no 6212 at First Community Financial Bank.

**ANSWER:**     **Advanced lacks sufficient knowledge to either admit or deny the allegations contained in Paragraph 116, and as such denies the same.**

117.     The January 3 transfer was on account of the January 3 bill that Advanced issued to the Debtor.

**ANSWER:**     **Advanced denies the allegations of Paragraph 117.**

118.     To the extent the Debtor was liable for Advanced's January 3 invoice, Advanced was a creditor of the Debtor and the monies owed to it were an antecedent debt.

**ANSWER:**     **The allegations contained in Paragraph 118 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

119.     As discussed in detail in Count 1, the Debtor was insolvent on the date of the transfer.

**ANSWER:**    **The allegations contained in Paragraph 119 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

120.    As a result of the transfer, Advanced received more than it would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the transfer had not been made; and (iii) Sherwin received payment of its debt under the provisions of the Bankruptcy Code.

**ANSWER:**    **The allegations contained in Paragraph 120 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

121.    As reflected in the Debtor's schedules as filed in the underlying bankruptcy case as well as the proofs of claim that have been filed to date, the Debtor's liabilities exceeded its assets to the point that unsecured creditors will not receive a full payout of their claims from the debtor's bankruptcy estate.

**ANSWER:**    **The allegations contained in Paragraph 121 state a legal conclusion of law, such that no response is required. To the extent that a response is required, Advanced denies same.**

## AFFIRMATIVE DEFENSES TO COUNT III

In addition and without assuming the burden of proof where it otherwise rests with Plaintiff, Ronald R. Peterson, as chapter 7 trustee for Mack Industries Ltd. ("Trustee") Advanced Home Remodeling Inc. ("Advanced") states the following defenses solely to Count III of the Trustee's Complaint:

## FACTS COMMON TO ALL AFFIRMATIVE DEFENSES

1.    Advanced was incorporated on January 17, 2013 and was involuntarily dissolved on June 8, 2018.

27

2.      During its five years in operation, Advanced provided home remolding and other construction services.

3.      At times, Advanced acted as a subcontractor, hired by and working under the direction of the general contractor on a particular project.

4.      On projects where Advanced worked as a sub-contractor, and as is customary in such situations, Advanced would be paid by the general contractor.

5.      During the time that Advanced was in operation, Mack Industries Ltd. ("Mack") hired Advanced to work as a sub-contractor on certain projects.

6.      When working as a sub-contractor for Mack, Advanced would be paid by Mack as is customary.

### First Affirmative Defense - Ordinary Course of Business

7.      Advanced incorporates and realleges the allegations of paragraphs 1-6 as though fully set forth herein as paragraph 7.

8.      Count III of the Trustee's Complaint seeks to avoid a transfer that Mack allegedly made to Advanced on January 3, 2017.

9.      However, Count III of the Trustee's Complaint fails pursuant to 11 U.S.C. §§ 547 (c)(2) (A) and 547(c)(2)(B) as any transfer made to Advanced was made as payment for work Advanced preformed as sub-contractor for Mack, the general contractor.

10.     The payment was made pursuant to terms negotiated and agreed upon by Advanced and Mack in accord with their ordinary course of business dealings as conducted between Advanced and Debtor.

11.     The payment was made on account of a debt incurred in the ordinary course of business or financial affairs between Advanced and Mack.

12.      Further, the payment was made pursuant to ordinary business terms employed in the construction/rehab industry.

13.      The payment is not subject to avoidance by the Trustee under 11 U.S.C. §§ 547 (c)(2).

**Second Affirmative Defense - New Value**

14.      Advanced incorporates and realleges the allegations of paragraphs 1-6 as though fully set forth herein as paragraph 14.

15.      The January 3, 2017 payment that may have been received by Advanced from the Debtor during the ninety (90) day period preceding the filing of the bankruptcy case were made, Advanced gave new value to or for the benefit of the Debtor not secured by an otherwise unavoidable security interest; and on account of which new value the Debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. Such transfer, therefore, is not subject to avoidance by the Trustee under 11 U.S.C. §§ 547 (c)(4).

**Third Affirmative Defense - Contemporaneous Value**

16.      Advanced incorporates and realleges the allegations of paragraphs 1-6 as though fully set forth herein as paragraph 16.

17.      The January 3, 2017 payment allegedly received by Advanced from the Debtor during the ninety (90) day period preceding the filing of the bankruptcy case were made contemporaneously in exchange for value given by the Defendant and was intended by Advanced from the Debtor to be made contemporaneously in exchange for value given by Advanced.   Said payment, therefore, is not subject to avoidance by the Trustee under 11 U.S.C. §§ 547 (c)(1).

**Fourth Affirmative Defense**

18.     The Trustee's claims are barred to the extent that the facts indicate that principles of equity, including laches, waiver, unclean hands, fraud, release, contributory negligence, equitable estoppel, apply to the claim.

**Fifth Affirmative Defense**

19.     Advanced reserves the right to amend and assert any additional defenses that may be discovered or developed during this proceeding.


WHEREFORE, Wherefore Advanced prays for a judgment against the Plaintiff, Ronald R. Peterson, as chapter 7 trustee for Mack Industries Ltd. and an order: (a) denying all relief sought by Plaintiff's Amended Complaint; (b) dismissing the Amended Complaint; (c) entering an award for the attorney's fees and costs incurred by Advanced in defending this action; and (d) granting such other relief as this Court deems just and equitable.

Respectfully submitted,

Advanced Home Remodeling Inc.

/s/   Pamela J. Leichtling
One of the Attorneys for Defendant
Advanced Home Remodeling Inc.

Pamela J. Leichtling# 6183213
Jill Sidorowicz #6299380
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois  60603
312-431-1455
intake@noonanandlieberman.com
pleichtling@noonanandlieberman.com
jsidorowicz@noonanandlieberman.com

2084-1

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Mack Industries, Ltd. *et al.,* | ) | Bankruptcy No. 17-09308 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | Honorable Carol A. Doyle |
| | ) | |
| Ronald R. Peterson, as Chapter 7 | ) | |
| Trustee for Mack Industries, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 19-00578 |
| | ) | |
| Advanced Home Remodeling, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 11, 2021, I caused to be electronically filed true and

correct copies of the foregoing Defendant's Answer to Amended Complaint using the CM/ECF

system, which will send notification of such filing to all attorneys of record.

Respectfully submitted,

Advanced Home Remodeling Inc.

/s/   Pamela J. Leichtling
One of the Attorneys for Defendant
Advanced Home Remodeling Inc.

Pamela J. Leichtling# 6183213
Jill Sidorowicz #6299380
Noonan & Lieberman, Ltd.
105 W. Adams, Suite 1800
Chicago, Illinois  60603
312-431-1455
pleichtling@noonanandlieberman.com
jsidorowicz@noonanandlieberman.com

31