**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|                                                    |     |                                          |
| -------------------------------------------------- | --- | ---------------------------------------- |
| In re:                                             | )   | Chapter 7                                |
|                                                    | )   |                                          |
| Mack Industries, Ltd., et. al.,                    | )   |                                          |
|                                                    | )   | No. 17 B 09308                           |
|                                                    | )   | (Jointly Administered)                   |
| Debtor.                                            | )   |                                          |
| _____             | )   |                                          |
|                                                    | )   |                                          |
| Ronald R. Peterson, as chapter 7                   | )   |                                          |
| trustee,                                           | )   |                                          |
|                                                    | )   |                                          |
| Plaintiff,                                          | )   |                                          |
|                                                    | )   |                                          |
| v.                                                 | )   | No. 19 A 00578                           |
|                                                    | )   |                                          |
| Advanced Home Remodeling Inc.                      | )   |                                          |
|                                                    | )   |                                          |
|                                                    | )   |                                          |
| Defendant.                                         | )   | Judge Carol A. Doyle                     |

**MEMORANDUM OPINION**

The chapter 7 trustee[1] of Mack Industries, Ltd. ("Mack") filed this adversary proceeding

against Advanced Home Remodeling Inc. seeking to avoid and recover alleged fraudulent

transfers made by Mack to Advanced. The trustee alleges fraudulent transfer claims based on

constructive fraud and actual fraud. She also seeks to avoid and recover a payment that she

contends was a preference.

Advanced moved for summary judgment. It asserts that the trustee cannot prove essential

elements of either of her fraudulent transfer claims and that it has a complete defense to both of

---

[1]Ronald Peterson was the initial trustee who filed the complaint in this case and
approximately 430 similar adversary proceedings. He resigned and was replaced by Ariane
Holtschlag, the current trustee.

1

the claims in any event.  Advanced also argues that the trustee's allegations in the amended complaint demonstrate that the transfer at issue in her preference claim was not preferential.

Advanced is correct that the trustee cannot prove her claim based on constructive fraud and that it is entitled to judgment on both of the fraudulent transfer claims based on its affirmative defense. Advanced is also entitled to judgment on the preference claim because the trustee has offered no evidence to support it.

I.      Background

The trustee alleged in the amended complaint that Mack hired and paid Advanced to perform construction work on properties that Mack did not own.  The trustee contends that those transfers were part of a scheme to deplete Mack's assets to defraud its largest creditor.  She seeks to avoid approximately $2 million[2] in payments to Advanced as fraudulent based on constructive fraud (Count 1) and actual fraud (Count 2).  The trustee also seeks to avoid a $30,000 payment to Advanced as a preferential transfer under 11 U.S.C. § 547 (Count 3) .

The trustee bases her constructive fraud claim in Count 1 on § 548(a)(1)(B) of the Bankruptcy Code, 11 U.S.C. § 548(a)(1)(B), and a provision of the Illinois Uniform Fraudulent Transfer Act ("IUFTA"), 740 ILCS 160/(5)(a)(2), which she invokes through § 544(b) of the Bankruptcy Code.  Section 544(b) allows a trustee to avoid a transfer that is voidable under state law.  The trustee bases her actual fraud claim in Count 2 on § 548(a)(1)(A) of the Bankruptcy

---

[2]The trustee originally sought to recover approximately $16 million in payments to Advanced as fraudulent transfers.  After reviewing a report from one of her experts, the trustee reduced her claim to approximately $2 million.  Trustee's Response to Advanced's Statement of Facts ("T's Response to Adv's SOF"), ¶ 56**.**

Code, 11 U.S.C. § 548(a)(1)(A), and Illinois law, 740 ILCS 160/5(a)(1), again through § 544(b). Section 548 of the Bankruptcy Code and IUFTA provide affirmative defenses to both types of avoidance claims.  The elements of the claims and the defenses available under federal and Illinois statutes are essentially the same.  *Baldi v. Samuel Son & Co.*, 548 F.3d 579, 580 (7th Cir. 2008);  *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer (In re Jumer's Castle Lodge, Inc.)*, 472 F.3d 943, 947 (7th Cir. 2007); *Reinbold v. Morton Community Bank (In re Mid-Illini hardwoods, LLC)*, 576 B.R. 598, 604 (Bankr. C.D. Ill. 2017).

Advanced moved for summary judgment.  It argues that the trustee cannot establish an essential element of her constructive fraud claim - that Mack did not receive reasonably equivalent value for each transfer.  It also contends that the trustee has insufficient evidence to warrant a trial on the actual fraud claim.  Advanced further asserts that it has a complete defense to both types of claims in any event because it gave value in good faith for the transfers it received.   Regarding the preference claim, Advanced argues that the trustee has alleged, and therefore judicially admitted, facts that demonstrate that the transfer in question is not a preference.  It contends that she cannot satisfy her burden of proof on this claim.

Advanced is correct on most of these issues.  It is entitled to judgment on all of the claims in the amended complaint.

II.    Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Bellaver v. Quanex Corp.*, 200 F.3d

485, 491 (7th Cir. 2000); Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P.

56 applicable in adversary proceedings in bankruptcy).  On a motion for summary judgment, the

court must decide "based on the evidence of record, whether there is any material dispute of fact

that requires a trial." *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 507 (7th

Cir. 2010) (internal citation omitted).

III.    <u>Constructive Fraud - Reasonably Equivalent Value</u>

Advanced argues that it is entitled to judgment on the constructive fraud claim in Count 1

because it is beyond dispute that it gave reasonably equivalent value for the payments it received

from Mack.  Both the Bankruptcy Code and Illinois law define "value" as satisfaction of a

present or antecedent debt of the debtor.  11 U.S.C. § 548(d)(2); 740 ILCS 160/4(a).  Advanced

argues that the transfers were made in satisfaction of antecedent debt - the obligation to pay

under the contracts it entered with Mack.  Advanced is correct.

It is undisputed that Mack entered into contracts with Advanced for it to improve

properties and that Mack paid Advanced for the work performed.  Advanced performed work as

requested by Mack, invoiced Mack, and Mack paid the invoices.  The trustee admits that each

transfer paid a debt owed by Mack.  T's Response to Adv's SOF ¶ 41. See also Marion Aff. ¶¶

22-29 and Jim Jr. Aff. ¶ 84.  It is thus beyond dispute that each transfer to Advanced was a

payment for an antecedent debt owed by Mack under the contract they entered.  This is "value"

as a matter of law.  *Peterson v. Capital One N.A., et al.,* No. 19-ap-372, 2020 WL 6708874 at *4

(Bankr. N.D. Ill. Nov. 16, 2020) (citing *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477-78

(7th Cir. 2005)).  Advanced also provided evidence showing that the amount it was paid for each

job was reasonable.  Adv's SOF ¶¶ 38-41; Jim Jr. Aff. ¶ 84(B),(C),(H),(K).  The trustee has presented no evidence calling into question this evidence of reasonableness.  Advanced has therefore established that there is no genuine issue of fact that Mack received reasonably equivalent value for each payment to Advanced.

The trustee tries to avoid this obvious conclusion by arguing that other related entities - those that owned the properties improved by Advanced's work - got the real benefit from the work performed by Advanced.  As explained in previous opinions, it makes no difference whether Mack incurred the debt to benefit someone else.  The repayment of an antecedent debt provides reasonably equivalent value as a matter of law.  *Capital One*, 2020 WL 6708874 at *4-5.  The trustee cannot negate the statutory definition of value by arguing that someone else ultimately benefitted from the value given.  And the trustee's argument would fail even if the transfers had not satisfied antecedent debts.

As discussed in detail in previous opinions, the focus of the inquiry regarding reasonably equivalent value is on the specific transaction the trustee seeks to avoid – the *quid pro quo* exchange between the debtor and the transferee -- rather than an analysis of the transaction's overall value to a debtor.  *Peterson v. TTS Granite Inc. (In re Mack Industries, Ltd.)*, 622 B.R. 887, 893 (Bankr. N.D. Ill. 2020); *Peterson v. Ferguson Enterprises Inc. (In re Mack Industries, Ltd.)*, No. 19-ap-436, 2020 WL 6589040 at *3 (Bankr. N.D. Ill. Nov. 10, 2020).  Courts examine the objective value of the goods and services provided rather than the impact the goods and services had on the debtor's business.  *Id.*; *Ferguson*, 2020 WL 6589040 (both citing *Trauner v. Delta Air Lines, Inc. (In re Think Retail Solutions, LLC)*, No. 17-ap-5078, 2019 WL 2912717 at

*16 (Bankr. N.D. Ga. 2019)).   As explained in *B.E.L.T*, the transferor's intent is irrelevant to a constructive fraud claim. 403 F.3d at 477-78.

The analysis regarding reasonably equivalent value does not change when a third party benefits from the transfer. *TTS Granite Inc.*, 622 B.R. at 894; *Ferguson*, 2020 WL 6589040 at *4.  In determining whether Mack got reasonably equivalent value, the court must examine only the specific transactions at issue, not Mack's overall financial condition or any fraudulent scheme that Mack's management might have been perpetrating.  Mack contracted for renovations, Advanced performed them, and Mack paid Advanced for the work performed.  Mack received reasonably equivalent value for the transfers it made to Advanced regardless of whether the work ultimately benefitted Mack or others.

-Trustee's New Theory - Avoiding the "Obligation"

The trustee briefly raises another argument to try to avoid the conclusion that Mack's satisfaction of an antecedent debt provided value as a matter of law.  She contends that, in addition to her claims to avoid the transfers of money to Advanced as constructively fraudulent, she seeks to avoid Mack's incurring of the obligations - entering into the contracts themselves - as constructively fraudulent.  She argues that the contracts with Advanced can be avoided as fraudulent because they did not benefit Mack.

Advanced complains that this is a new argument raised for the first time in the trustee's response to the motion for summary judgment.  This is perhaps correct but the amended complaint does at least mention "obligations" as well as transfers.  The trustee's original complaint sought only to avoid and recover fraudulent transfers.  It made no reference to

6

"obligations." Advanced moved to dismiss the fraudulent transfer claims in that complaint. The motion was granted. The trustee filed an amended complaint that focused, again, on fraudulent transfers. The titles of both fraudulent transfer counts refer only to avoiding and recovering fraudulent transfers and the prayers for relief seek only avoidance of transfers and recovery of the amounts transferred. The trustee did, however, add some references to "obligations" and "incurring obligations" to a number of paragraphs in the fraudulent transfer counts. *E.g.,* Amended Complaint, ¶¶ 89, 91 106, 107, 109, 110. Since the amended complaint mentions obligations as well as transfers, the trustee's argument cannot be disregarded on the basis that it is "new."

Consistent with the focus of her amended complaint, though, the trustee devoted almost all her 22-page response to her claims to avoid and recover transfers. She spent only two paragraphs arguing that "Advanced ignores the Trustee's request to avoid obligations." Trustee's Response, p. 9, § 2.2.4. She cited no authority (other than "§ 548" generally) for her contention that she can avoid the "obligations" - Mack's contracts with Advanced - and then somehow recover the amounts paid to Advanced under the contracts. Her argument fails for a number of inter-related reasons.

First, although § 548(a) and Illinois law allow a trustee to avoid a transfer made or an "obligation" incurred by a debtor, the trustee fails to mention that she cannot recover the "value" of an avoided "obligation" for the bankruptcy estate. Section 550(a) of the Bankruptcy Code permits the trustee to recover for the benefit of the estate only "the property *transferred*" or "the value of such property [transferred]." 11 U.S.C. § 550(a)(1). It does not allow the trustee to recover into the estate anything regarding an avoided "obligation." Instead, avoiding an

obligation under § 548(a) and IUFTA can be used by a trustee to avoid paying a claim or to otherwise benefit the estate by eliminating the obligation of the debtor to do something. *Stone v. Morton Community Bank (In re Int'l Supply Co.)*, 631 B.R. 331, 339-340 (Bankr. C.D. Ill. 2021). Thus, avoiding the obligations - the underlying contracts between Mack and Advanced - does not bring the money paid to Advanced under the contracts into the estate. Perhaps recognizing this, the only relief sought in the amended complaint is to avoid the *transfers* and recover the *transfers* into the estate. The "wherefore" clauses of the two fraudulent transfers claims seek only to: (1) avoid the *transfers*, *i.e.,* the payments made to Advanced, and (2) enter a money judgment in the total amount of the *transfers* proved at trial. Amended Complaint, pp. 13, 14. The trustee has not sought the relief of avoiding the "obligations" of each contract between Mack and Advanced, nor has she explained why the contracts with Advanced should be avoided or how this would lead to entry of a money judgment against Advanced.

Second, the definition of "value" in § 548(c) and section 160/4(a) applies to all claims asserted under § 548(a) and IUFTA, whether the claim is to avoid a transfer or an obligation. The trustee never explains why the definition of "value" does not apply to a claim to avoid the "obligation" of the contracts. She cited no authority at all, let alone authority for avoiding as constructively fraudulent a contract that reflected a simple exchange of requested goods and services - value - for payment. She seeks, again, to nullify of the definition of "value," as well as the case law recognizing that whether a contractual obligation benefits someone other than the debtor is irrelevant to a constructive fraud claim, simply by stating without support that the underlying contract should be avoided because it benefitted someone else.

Third, as is evident, this argument is undeveloped and unsupported. The trustee never explains her theory, provides any authority to support it, or shows how it would lead to recovery of money from Advanced into the estate. The argument is therefore waived. *Massuda v. Panda Exp., Inc.*, 759 F.3d 779, 783 (7th Cir. 2014). The trustee cannot defeat Advanced's motion for summary judgment simply by saying she seeks to avoid obligations.

Advanced is entitled to summary judgment on the trustee's claim based on constructive fraud in Count 1 because it has established that it provided reasonably equivalent value for each transfer it received. The trustee failed to produce any evidence to show there is a genuine issue of material fact regarding this key element of her claim. And, as discussed below Advanced is entitled to judgment on both the constructive fraud claim and the actual fraud claim based on its affirmative defense of "value in good faith."

IV.    Affirmative Defense to Constructive Fraud and Actual Fraud Claims

Advanced also argues that it is entitled to judgment on the constructive fraud claim and the actual fraud claim based on the affirmative defense that it provided value in good faith for each transfer. Advanced is correct.

The Bankruptcy Code and IUFTA provide affirmative defenses to fraudulent transfer claims based on constructive fraud and actual fraud. Under § 548(c) of the Bankruptcy Code, a transferee who took the transfer for value and in good faith may retain any transfer that is avoidable under § 548(a)(1)(A) (based on actual fraud) or § 548(a)(1)(B) (based on constructive fraud). Section 160/9(d) of IUFTA provides essentially the same defense for transfers based on constructive fraud and actual fraud. It provides: "Notwithstanding the voidability of a transfer or

9

an obligation under this Act, a good-faith transferee is entitled, to the extent of the value given the debtor for the transfer . . . to retain any interest in the asset transferred." 740 ILCS 160/9(d). *See, e.g., In re Grove-Merritt*, 406 B.R. 778, 808 (Bankr. S.D. Ohio 2009) (UFTA "allows a recipient of a fraudulent transfer to still avoid liability to the extent that the recipient proves that value was given in good faith."); *In re Zeigler*, 320 B.R. 362, 374 (Bankr. N.D. Ill. 2005) ("a defense under § 9 of the UFTA consists of two elements: good faith and reasonably equivalent value."); *Moglia v. Universal Automotive, Inc. (In re First National Parts Exchange, Inc.*), No. 98-cv-5915, 2000 WL 988177, *3, n.3 (N.D. Ill. July 18, 2000) (noting that the defense provided in section 160/9(d) is "substantially the same" as the defense provided in § 548(c)); *see generally Scholes v. Lehmann,* 56 F.3d 750, 756-58 (7th Cir. 1995).[3] Section 160/9(a) also provides a defense to an actual fraud claim for a transferee who "took in good faith and for a reasonably equivalent value." 740 ILCS 160/9(a). *See Grove-Merritt*, 406 B.R. at 808; *Kennedy v. Four Boys Labor Service, Inc.*, 664 N.E.2d 1088, 1093 (2nd Dist. 1996).[4] The defendant bears the

---

[3]Advanced discussed the defense provided in § 548(c) in its memorandum in support of its motion. The trustee responded that § 548(c) does not apply to the claims under Illinois law. This is true, but she failed to mention that Illinois law provides essentially the same defense.

[4]The trustee contends that the IUFTA good faith defense applies only to actual fraud claims, not constructive fraud claims. The trustee provides no citation or other support for this one-sentence assertion. The statute to which the trustee presumably refers is 740 ILCS 160/9(a), which provides that "[a] transfer or obligation is not voidable under paragraph (1) of subsection (a) of Section 5 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Section 5(a)(1) applies to transfers made "with actual intent" to defraud. The trustee disregards, however, that section 160/9(d) provides a defense based on value given in good faith to any fraudulent transfer, actual or constructive. *See also In re Grove-Merritt*, 406 B.R. 778, 808 (Bankr. S.D. Ohio 2009) (UFTA "allows a recipient of a fraudulent transfer to still avoid liability to the extent that the recipient proves that value was given in good faith."). Here, Advanced satisfies the "value" requirement for both IUFTA defenses - "value given" and "reasonably equivalent value" - because Advanced has shown that it provided value that is fully equivalent to the amount of each transfer.

burden of proof on these affirmative defenses. *Helms v. Roti (In re Roti)*, 271 B.R. 281, 295-96

(Bankr. N.D. Ill. 2002).

Thus, Advanced can prevail on the trustee's claims under the Bankruptcy Code and

IUFTA based on actual fraud and constructive fraud if it can establish that it gave reasonably

equivalent value (or the full value of the transfer) in good faith. It has established both.

A.      Transfer for Value

As discussed in Section III above, Advanced has established that it provided both "value"

and "reasonably equivalent value." The transfers to Advanced satisfied the antecedent debts

owed by Mack under the contracts for the work that Advanced performed. Advanced has also

shown that the value it gave in goods and services was equal to the amounts transferred - that its

services were worth what was paid. Advanced has therefore satisfied the value/reasonably

equivalent value element of its affirmative defense.

B.      Good Faith

To prevail on its affirmative defense, Advanced must also show that it took the payments

from Mack in good faith. The "test for good faith asks whether the transferee was placed on

inquiry notice regarding the fraudulent nature of the transfer and if so, whether the transferee was

diligent in its investigation regarding the transfer." *Maxwell v. United States (In re Horizon

Group Mgmt. LLC)*, 617 B.R. 581, 591 (Bankr. N.D. Ill. 2020). "To determine whether a

transferee was put on inquiry notice, the court examines whether the transferee was aware of

'suspicious facts that would have led a reasonable [person], acting diligently, to investigate

11

further and by doing so discover wrongdoing.'" *Id*. (quoting *Grede v. Bank of N.Y. Mellon Corp.
(In re Sentinel Mgmt. Grp., Inc.)*, 809 F.3d 958, 961 (7th Cir. 2016)).  On the other hand, a

transferee has no duty to investigate when nothing that he knows points to the transfer being

fraudulent.  A transferee who lacks the information that would support knowledge of a fraud is

not required to start investigating on his own.  *In re Commercial Loan Corp.*, 396 B.R. 730, 745

(Bankr. N.D. Ill. 2008) (citing *Bonded Financial Services, Inc. v. European American Bank*, 838

F.2d 890, 897 (7th Cir. 1988)).

Advanced has produced evidence showing that it was not on inquiry notice of any

potential fraud.  The trustee has failed to show that there is a genuine issue of fact regarding

Advanced's good faith.

### 1.    Marion Affidavit

Advanced submitted the affidavit of Michael Marion, its former president, to demonstrate

that it had no knowledge of anything suspicious that would have put it on inquiry notice

regarding its work for Mack.  He stated that he assumed Mack owned the properties Advanced

worked  on, he had no reason to suspect otherwise, he did not know that Mack's largest creditor

had sued Mack, and he did not know anything about a potential "scheme to defraud" until the

trustee filed this adversary proceeding against Advanced.

Marion's affidavit states as follows.

- Advanced started working on projects for Mack in 2013.

- "Mack hired Advanced directly.  Advanced would receive a contract for work from a

supervisor at Mack, via email."  Marion Aff. ¶ 11.

- "The contract would specify the terms of the construction project, including the scope and price.  Mack set the price for the project."  Marion Aff. ¶ 12.  "On other occasions, Mack hired Advanced by sending purchase orders with the total cost of the construction project, including itemization of costs."  Marion Aff. ¶ 13.

- "The contracts stated that Mack Companies was the 'Client' hiring Advanced and . . . that Advanced agreed it would be renovating a house for Mack Companies."  Marion Aff. ¶ 16.

- "The contracts specified that Mack would obtain all construction permits for the work."  Marion Aff. ¶ 18.

- "Advanced was not required to submit lien waivers."  Marion Aff. ¶ 19.

- "Mack never advised Advanced of the names of properties' owners."  Marion Aff. ¶ 20. "Mack listed the property address on the contracts/purchase orders but no information regarding ownership was provided."  Marion Aff. ¶ 21.  "Since Mack hired and paid Advanced, there was never a discussion regarding ownership of the properties."  Marion Aff. ¶ 22.

-"Advanced would submit invoices to Mack Companies for payment, addressed to Mack's central business office in Tinley Park, IL.  . . .  It was in Advanced's regular course of business to generate this type of invoice to get paid from Mack."  Marion Aff. ¶ 24.  "Mack paid Advanced the amount requested on Advanced's invoices after Mack's field supervisors/employees inspected and approved the construction work performed at the properties. . . ."  Marion Aff. ¶ 26.

- "Advanced continued to perform construction work at Mack's request, at Mack properties until Mack filed for bankruptcy."  Marion Aff. ¶ 30.

13

- "Prior to Mack filing bankruptcy, I had no knowledge whether Mack was having financial trouble.  Mack never discussed with me whether it was having financial trouble." Marion Aff. ¶ 31.

- "Prior to Mack filing bankruptcy, I had no knowledge that American Residential Leasing [Mack's largest creditor] filed a lawsuit against Mack."  Marion Aff. ¶ 32.

- "I had no knowledge regarding Mack and ALR contract negotiations or alleged statements made as to a 'fraudulent scheme' until the Trustee filed the instant adversary action." Marion Aff. ¶ 34.

The Marion affidavit supports Advanced's contention that it was unaware of any scheme to divert funds from Mack to other entities in the form of Advanced's services and that it did not know that the properties it improved were owned by any entity besides Mack.  The affidavit and other evidence offered by Advanced are sufficient to meet its burden of proving good faith.

### 2.      Trustee's Evidence

The trustee has offered no direct evidence to contradict any of Marion's statements or the evidence offered by Advanced to support the affidavit.  Instead, she makes four arguments to attempt to counter this evidence.

First, the trustee argues that Marion's affidavit should be disregarded because it is "self-serving."  Most testimony is self-serving.  This is not a basis for disregarding the affidavit.[5]  The trustee must produce evidence showing that there is a genuine issue of material fact regarding

---

[5]The trustee refers to a motion to strike Marion's affidavit in her Response to Advanced's Statement of Facts.  No such motion was ever filed.

Marion's assertions.  Marion supported his statements with copies of contracts, invoices, purchase orders, etc.  The trustee has provided no evidence that contradicts his statements or the other evidence provided by Advanced that support his statements.

Second, the trustee argues that Advanced was on inquiry notice because it knew it could have potential mechanics lien rights in all of the properties if it was not paid for its work.  She states that Marion "threatened to place liens in the past."  This statement suggests that Marion threatened to place mechanics liens on the properties Advanced worked on for Mack.  This is not true.  In the cited testimony, Marion testified only that he was aware generally that he could assert a mechanics lien if he was not paid for work.  He said that he had threatened to do that against other parties in the past (not against any Mack entity) but he had never actually placed a mechanics lien on a property.  He did not testify that he ever considered placing a mechanics lien on any property he worked on for Mack or that he did place such a lien.

The trustee fails to explain why Marion's general knowledge about mechanics liens would have put Advanced on inquiry notice.  Marion's testimony about mechanics liens does not call into question his statement that he assumed that Mack owned the properties that Advanced worked on.  The trustee admits that Mack did not disclose the owners of the properties to Advanced.  T's Response to Adv's SOF, ¶ 33.  The trustee does not contest that Mack obtained all the construction permits and never asked Advanced to sign lien waivers so Advanced had no reason to see documents that could potentially identify the owner of the properties.  Advanced never even considered asserting mechanics liens on the properties so it had no reason to look at

property records in anticipation of any such filing. Marion's mere knowledge that his company could potentially assert mechanics liens proves nothing regarding inquiry notice.[6]

Third, the trustee states that Marion knew that Advanced was doing work on some properties owned by McClelland family members. She refers in her statement of facts only to Marion's deposition testimony. He testified only that he did a "little bit of floor work" at McClelland's sister's home after a flood and that he did a small tile repair job in Keith McClelland's home. She presents no evidence of who paid for the work or how much it cost. Assuming Mack paid for the work, these two trivial jobs performed on homes of two McClelland family members, in the context of over $16 million worth of work done by Advanced for Mack, a family-owned business, are not enough to raise a genuine issue of fact regarding whether Advanced was on inquiry notice that Mack may have been engaging in fraud.

Finally, the trustee argues that Marion and Jim Jr. were close friends and discussed financial issues in writing at least once. She contends, without explanation or support, that this is enough to put Advanced on inquiry notice. This argument fails for at least two reasons. First, the trustee's evidence does not support her contention that Jim Jr. and Marion were close friends. It shows only that they played pickup basketball together with a large group of men. The court rejects as nonsense the trustee's suggestion that two men who play pick-up basketball are necessarily "close" friends. Second, and more importantly, the court rejects the premise of the trustee's argument - that Advanced would be on inquiry notice if Marion and Jim Jr. were in fact "close" friends and they discussed Mack's financial issues on one occasion. These alleged facts

_____

[6]Indeed, if the trustee's argument were accepted, every contractor that understands its rights under mechanics lien laws would automatically be on inquiry notice of potential fraud.

16

would not put Advanced on inquiry notice even if proven.  Instead, the trustee must produce

evidence that Advanced had information that would raise a reasonable suspicion that Mack could

be engaged in fraud.  The evidence produced by the trustee does not do that.

The parties agree that Marion and Jim Jr. met playing basketball at a gym.  Jim Jr.

testified that they both played pickup games at Lifetime Fitness and were among 25 men who

played regularly.  T's Ex. 1, 15:7-17.  Marion explicitly stated in his affidavit that they were not

social friends.  Marion Aff. ¶ 6.  Jim Jr. stated the same thing in his affidavit.  Jim Jr. Aff. ¶ 75.[7]

The trustee cites only two pieces of evidence to try to counter their statements that they

were not close friends and support her contention that they were such close friends that, in effect,

it must be assumed that Jim Jr. provided Marion with information that would have raised a

suspicion that fraud was afoot.  First, the trustee relies on an email sent by Jim Jr. regarding a

basketball game he was organizing as a "celebration of our friendship."  Trustee's Statement of

Additional Facts ("T's SOAF") ¶ 39, T's Ex. 12.  In that email, Jim Jr. wrote:  "We are getting

the band back together.  Unfortunately Morley is in town for the funeral of our friend Steve

Mefford so I would like to turn it into a celebration of our friendship with a round of hoops. I

have the Sportsplex rented from 8-9 pm on Wednesday night.  Please let me know if you can

make it."   The exhibit does not directly show whether the email was sent only to Marion or to all

of the "band" but it is obvious that Jim Jr. had rented a basketball court and is inviting "the

---

[7]The trustee attacks Jim Jr.'s affidavit in her Response to Adv's SOF and she refers to a
motion to strike Jim Jr.'s affidavit.  No such motion was ever filed.  She cites *Beckel v. Wal-
Mart Assocs.*, 301 F.3d 621 (7th Cir.2002), for the principle that an affidavit that contradicts the
affiant's testimony should not be given weight on a motion for summary judgment.  But the
trustee fails to identify a single statement in Jim Jr's affidavit that contradicts his deposition
testimony.  Her argument that Jim Jr.'s affidavit should be disregarded has no merit.

band," not just Marion, to a game of pickup basketball because one of the men in "the band" was in town. It is also obvious that the "friendship" to which Jim Jr. refers is among the group of men who played basketball together, not specifically between Jim Jr. and Marion. In his deposition testimony, Jim Jr. described the email simply as "an email from me to Mike, letting him know we're playing basketball." T's Ex. 1, 16:17-18. Nothing in this email suggests a close friendship between Jim Jr. and Marion or even hints that Jim Jr was sharing information with Marion that would lead him to suspect that something was amiss.[8] This email does not create an issue of fact regarding whether Advanced was on inquiry notice.

The trustee's second piece of evidence offered to support her contention that Advanced was on inquiry notice is another email sent by Jim Jr. to Marion. T's Ex. 16. In the trustee's Statement of Additional Facts, she states that this email shows they were "close enough" that they discussed Mack's financial issues. T's SOAF ¶ 40. Notably, the trustee never attempts to explain why discussing Mack's financial issues should have made Advanced suspect that fraud was afoot. This email does not create a genuine issue of fact regarding inquiry notice for at least two reasons. First, the email was sent on February 17, 2017, five weeks before Mack filed for bankruptcy and six weeks after January 3, 2017, the date of the last transfer that the trustee seeks to avoid. Adv's Ex. E. The information in the email, therefore, could not provide a basis for putting Advanced on inquiry notice regarding any of the transfers at issue in this case. Second, the email would not provide inquiry notice in any event. Though the email shows that Jim Jr. did

---

[8]As noted above, even if the evidence had shown that the two men were "close" friends, no reasonable inference could be made merely from such a friendship that Jim Jr. told Marion anything that would put Advanced on inquiry notice of fraud. It is not reasonable to assume that a person engaging in fraud would disclose this to a "close" friend without some specific evidence suggesting this. Here, the trustee has none.

18

briefly discuss some of Mack's financial issues, it does not support the trustee's argument that the two men were "close" friends or that Marion had any reason to suspect that Mack was engaging in fraud.

In the email, Jim Jr. told Marion that he had advanced "large sums of money" to Advanced and those advances had put him and his business "in harm's way." Jim Jr. then stated: "We do have business going forward but as I reorganize I am getting pressure from the banks to resolve this issue. At a minimum for now I need your guys to finish the houses on this list asap. I need your guys there every day and even Saturday's if possible. Not closing homes under my current model will kill my plan. . . . We need to plan for this so I can avoid being pushed to collection by my own creditors." This email told Marion that Jim Jr. was not happy with the speed of Advanced's work and that Advanced's failure to finish work was preventing Jim Jr. from carrying out "his plan," presumably selling the properties and paying Mack's creditors from the proceeds of sale. Though Jim Jr. said that the money paid to Advanced put his business "in harm's way," that he was getting pressure from banks, and that he wanted to avoid being pushed to collection by his own creditors, the email does not provide any basis for Marion to suspect that Mack could be engaging in fraud. The trustee has failed to identify anything "suspicious" about Jim Jr.'s statements that would give Advanced reason to suspect that Mack was engaging in fraud. This email would not create an issue of fact regarding whether Advanced was on inquiry notice even if it had been sent before Advanced received the last transfer the trustee seeks to avoid.

Advanced has presented evidence sufficient to meet its burden of proof on the issue of good faith. The trustee has failed to present evidence demonstrating that there is a genuine issue

19

of material fact regarding good faith.  Advanced is therefore entitled to judgment on all of the

fraudulent transfer claims based on its affirmative defense that it provided value in good faith for

all the payments it received from Mack.[9]


V.      Preference Claim

Advanced also seeks summary judgment on the preference claim in Count 3.  The trustee

seeks to recover $30,000 transferred by Mack to Advanced 80 days before the petition date.

Advanced argues that the trustee made a judicial admission in the amended complaint that the

payment was a loan advance from Mack to Advanced and that a loan advance is not a preference

as a matter of law.  The trustee responds that her allegation should not be treated as a judicial

admission that the payment was a loan advance.  The court need not decide whether the trustee's

allegation should be considered a judicial admission because the trustee loses in any event.  She

has presented no evidence to support her preference claim.

Section 547(b) allows a trustee to avoid a transfer of an interest of the debtor in property

to a creditor on account of an existing antecedent debt owed by the debtor made while the debtor

was insolvent and within 90 days before the petition date.  11 U.S.C. § 547(b).  A loan is not a

preference because it is not a payment on account of an antecedent debt.  *See Maxwell v. Penn*

*Media (In re marchFirst, Inc.)*, No. 03-ap-1141, 2010 WL 4027723, at *5 (Oct. 14, 2010)

---

[9]Advanced also agues that the trustee's evidence is insufficient to warrant a trial on her actual fraud claim.  The court need not analyze the evidence to determine whether the trustee's evidence, though underwhelming, is sufficient to survive summary judgment because Advanced's affirmative defense defeats the claim.

(advance payments are not transfers on account of an antecedent debt). The trustee has the burden of proof on every element of the claim. 11 U.S.C. § 547(g).

The trustee alleged that on January 3, 2017, Advanced "issued a bill to the Debtor for $30,000, describing the invoice as a 'loan advance.'" Amended Complaint ¶ 115. She then alleged: "The January 3 transfer was on account of that January 3 bill that Advanced issued to the Debtor. To the extent the Debtor was liable for Advanced's January 3 invoice, Advanced was a creditor of the Debtor and the monies owed to it were an antecedent debt." ¶¶ 117, 118. Advanced argues that these allegations are a judicial admission that the payment was an advance on a loan. The trustee does not contest that a loan advance cannot be avoided as a preference. She argues instead that her allegation should not be treated as a judicial admission that the transfer was for a loan advance. She contends that she alleged only that the books and records showed this payment and others as "loan advances" made on account of a note receivable owed by James H. McClelland. She states that she never alleged that the payments were for a loan. She then requests that Advanced be held liable for the payment on other theories and she seeks leave to amend her complaint once again.

The trustee has failed to produce any evidence to support the preference claim she alleged. Advanced's motion puts the trustee to her proof, as it is entitled to do on a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (summary judgment should be entered for defendant if plaintiff failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof); *Pena v. A & C Landscaping, Inc.*, No. 05-cv-3571, 2009 WL 2973059, at *3 (N.D. Ill. 2009) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.2005)) (Summary judgment is "not a

dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit," when a nonmoving plaintiff must show what evidence it has to prove its claim).  The trustee has not even attempted to produce evidence that could satisfy the elements of a preference claim.  Advanced is therefore entitled to judgment on this claim.

The trustee seeks leave to amend her amended complaint through one-half of a sentence at the end of her response.  She fails to address the standard for amending her amended complaint or explain why she meets that standard.  This request is denied as undeveloped and unsupported.  Five and a half years after the Mack bankruptcy cases were filed, and three and a half years after the adversaries were filed on the eve of the expiration of the statute of limitations, the trustee now seeks to allege completely different claims based on unidentified facts with no legal support.  She may not defeat summary judgment by this last-ditch effort.  The request for leave to amend is denied.

VI.     Conclusion

For all of these reasons, Advanced is entitled to summary judgment on all the claims in the amended complaint.   Judgment will be entered by a separate order.

Dated: November 10, 2022

ENTERED:

Carol A. Doyle
United States Bankruptcy Judge